JOSEPHUS MOORE, APPELLANT, v. SYLVANUS MOORE ET AL., APPELLEES.

FILED MARCH 8, 1899.   No. 7942.

1. **Vendor and Vendee: PARENT AND CHILD.** Evidence examined, and *held* not to establish the existence of an oral contract between

appellant and his father and mother that on the death of the survivor of them the title to their real estate should vest in appellant.

2. Executors and Administrators: CLAIM AGAINST ESTATE: EVIDENCE. Evidence examined, and *held* not sufficient to sustain a finding that any sum of money was due appellant from his father and mother's estate.

APPEAL from the district court of Dawson county. Heard below before NEVILLE, J. *Affirmed.*

*Francis G. Hamer,* for appellant.

*Rice & Johnston, Elwood Hunt,* and *J. M. Forristall,* contra.

RAGAN, C.

In the district court of Dawson county Josephus Moore brought this action against Sylvanus Moore and others. In his petition Josephus Moore alleged that from 1878 until his death, which occurred in October, 1886, his father, Hamilton Moore, was the owner in fee of and resided upon the southeast quarter of section 12, township 9 north, and range 19 west, in Dawson county, Nebraska; that his father was old and infirm for a number of years before his death and unable to take care of himself, and required the constant care and attendance of others; that he resided with his father from 1872 continuously until just before his death, supported him and his mother until her decease, and in so doing expended large sums of money and performed much labor; that all this was done by him in pursuance of an oral agreement between his father and mother upon one part and himself on the other that upon the decease of the father and mother he, Josephus Moore, should have said quarter section of land as compensation; that in pursuance of the agreement he, Josephus Moore, was to enter upon the possession of said described land and remain in possession thereof until the death of his father and mother and thenceforth forever; that in pursuance of said oral agreement he did enter

upon said real estate, made valuable improvements thereon, and that his father and mother resided upon said real estate with him, and that he provided for them and supported them until the decease of the survivor of them; that his mother died in March, 1884, and that shortly before his death the father went to Indiana to visit the scenes of his early years, and while there became and was of a weak mind and failing intellect, and in disregard of his agreement with his son, Josephus Moore, and while under the illegal influence of certain of Josephus' brothers and sisters, the father conveyed said real estate, without consideration, to two of said sisters; that the value of the labor and money expended by him upon said real estate and in caring for his said father and mother was $5,125. The prayer of the petition was that the deed made by his father, Hamilton Moore, in Indiana might be declared void and the title to the real estate be decreed to be in him, Josephus Moore, or that if for any reason the court could not make such a decree his, Josephus Moore's, claim for money and labor and care expended in behalf of his father and mother might be decreed a valid lien upon the premises, and that they should be sold for the satisfaction thereof. The district court found that the evidence was insufficient to establish an oral contract between Hamilton Moore and his wife with their son, Josephus Moore, as he alleged in his petition; that the possession of the land in controversy was in the said Hamilton Moore from the time he entered the same under the United States homestead laws until the deed made in Indiana to the parties made defendants to this action; that the possession of said real estate never was in Josephus Moore, and that the deed made by Hamilton Moore in Indiana to the parties made defendants was executed and delivered by him of his own free will and accord, and that no undue influence was used to induce him to so convey the land, but that the deed was based upon a valid consideration, and at the time the said deed was made said Hamilton Moore was of sound mind. The

court entered a decree dismissing the petition of Josephus Moore, and he has appealed.

1. The evidence in the record abundantly sustains each and every finding made by the district court, and would sustain no other finding. It would subserve no useful purpose to quote all this evidence. Hamilton Moore, his wife, and their two sons, Josephus and Russell, came to the state of Nebraska about 1873. They came from the state of Indiana, where Hamilton Moore left some sons and daughters living, who were at that time married. When Hamilton Moore and his wife came to Nebraska their sons, Josephus and Russell, were unmarried, and so remained for a number of years. Hamilton Moore acquired title to the land in dispute by patent from the United States government under the homestead act of congress. In support of appellant's claim that an oral contract existed between himself and his father and mother whereby he was to have the title to the father and mother's homestead on the death of the survivor of them in consideration that he would support and care for them during their natural lives, and that he had in all respects carried out his contract, a number of witnesses testified that in conversations with the father and mother, and especially with the mother, each of the old people had said that upon their death the farm was to be appellant's; that the farm was appellant's; that appellant was taking care of and supporting them, and other conversations of similar import. No one testified to having heard made any such a contract as the appellant alleged in his petition, nor did any one testify that either of the old people said that such a contract existed, as appellant alleged. Some time before her death the mother went to Indiana, where she died in March, 1884. In October and November, 1884, she wrote the appellant long letters, but not a word is said in either of these letters about the title to the family homestead belonging to the appellant; not a word in the letters in reference to any contract between the father and mother that upon

the latter's death the appellant should have the homestead; and yet in one of these letters she expresses the opinion that she will never be well again. In December, 1885, the mother was dead, the father was still in Nebraska, and in that month the appellant wrote a letter to a brother of his living in Indiana, and in this letter he said: "Last Monday father went to Davidson's to board. I will not have him about me any more. If any of you want to pay me $500 ready money I will waive all right to the estate and be done with him and it; otherwise I will take a thousand dollar claim to the courts. If you want a hand in this business you had better see to it at once." In January, 1886, appellant writes another letter to a brother or sister in Indiana, in which he speaks of Russell, his brother, being in jail on a charge of larceny and that his wife was without anything to eat. He said: "I had the county to provide for her, all except fuel. I told Davidson to take her a load of corn and charge it up to the rent on the place [the place was the father's homestead and rented to Davidson], and if it is sold I think I should have whatever portion falls to Russell to partially reimburse me for what I have paid out for him. * * * I think father's farm had better be sold. It would bring about $2,500." On July 6, 1884, a letter is written to the appellant by one of his sisters living in Ohio in answer to a letter which the appellant had written her in June of the same year. From this letter it would appear that the writer was present when her mother died. She said: "Mother wanted Eliza [another child] to have all that they left after her and father's expenses were paid. It was hard for her to talk. I thought I would help her. I said, 'You want Josephus to have the rest?' She said, 'No; he has a farm of his own.' She seemed to think you was most perfect. I wish I was there to talk with you." In December, 1885, the appellant wrote a letter to his brother in Indiana, in which he said: "Father has made an article of agreement with W. J. Davidson, renting the farm to Davidson for

two years, * * * by which Davidson is not bound to give father a bushel of wheat, corn, or potatoes, but father has to pay taxes and help buy a threshing machine, and the article deprives me of the privilege of looking after the place entirely. * * * This I can break up if he still continues to cause me so much trouble. I will attempt to take the place out of his control as long as I have to take care of him, and if I fail, then I will sue for pay for taking care of him during the last ten years and save what I can that way." In December, 1885, a sister of the appellant in Indiana writes him a letter, in which she says: "I got your letter a few days ago. Was sorry to hear of you and father having trouble about the control of the place. * * * Dear brother, do not think of ever suing for taking care of him. I will take him and take care of him the rest of his life and want nothing for it." The district court made no mistake in finding that the appellant had not established the existence of the oral contract between himself and father and mother which he pleaded in his petition.

2. The evidence on behalf of the appellant tended to show that he broke up some of the land in controversy, put some improvements of small value thereon; that his father and mother lived on the place with him, the appellant; that he boarded and took care of them; that the father was a cripple and unable to work and unable to help himself, and that the appellant dressed him and undressed him, put him to bed, and gave him the care that a helpless old man would need. On the other hand, the evidence shows that the mother, while she remained in Nebraska, was a hale, healthy, intelligent old lady, was a midwife and made money practicing that profession; that she did the work usually done by housewives on farms; that the old gentleman, though crippled with rheumatism, was a very industrious man; that he worked in the garden and chopped wood and did such chores as he was able to do; that the appellant, until he married, lived with the old people instead of their living with him;

that while he managed and controlled the farm for a number of years he also took the rents and profits of the same; that while he was living with his father and mother and managing their farm he was also the owner of two quarter sections of land near the family homestead, and that he was carrying on some farm operations on these lands and improving them; and the evidence is undisputed that at the time the old people came to Nebraska they brought $1,800 in money with them, and after that money was sent out here to the family in Nebraska from the children in Indiana. There is no evidence in this record which would justify us in finding that there was any sum of money whatever due to the appellant from his father and mother, or their estate, much less that the appellant was entitled to a lien upon this land for any reason whatsoever. If the estate of his father and mother is indebted to him, he must go to the probate court with that claim. This court has no probate jurisdiction. The decree of the district court is right—altogether right—and is

AFFIRMED.