[Civil No. 1888.   Filed November 16, 1921.]

[201 Pac. 634.]

ALMA JOHNSON, Appellant, v. ABEL MOILANEN, as Administrator of the Estate of JOHN MOILANEN, Deceased, Appellee.

WITNESSES — REFUSAL TO PERMIT PLAINTIFF TO TESTIFY AS TO TRANS-ACTIONS WITH DECEDENT HELD NOT ABUSE OF DISCRETION.—Under Civil Code of 1913, paragraph 1678, prohibiting parties from testifying as to the transactions with a decedent unless called by opposite party "or required to testify thereto by the court," the court, in a suit to recover moneys advanced to deceased, *held* not to have abused its discretion in refusing to permit plaintiff to testify as to such transactions.

APPEAL from a judgment of the Superior Court of the County of Gila. G. W. Shute, Judge. Affirmed.

Mr. John M. Feier, for Appellant.

Messrs. McCann & Watson, for Appellee.

McALISTER, J.—Alma Johnson filed suit in the superior court of Gila county against the administrator of the estate of John Moilanen, who died January 25, 1919, in which she alleges that she loaned and advanced to the deceased upon his oral promise to repay $800 as follows: $500 on March 5, 1917, $250 on May 18, 1917, and $50 on November 30, 1917. That no part of said loan has been paid, and that a verified claim for the amount was filed in proper time with the administrator and by him disallowed. From a judgment for the defendant and an order denying plaintiff's motion for a new trial, she appeals.

Several errors are assigned, but they each raise in a different way the only question presented by the appeal, which is the correctness of the trial court's ruling in not permitting the plaintiff to testify to the facts alleged in her complaint. The transaction out of which the cause of action arose occurred, according to the allegation, previous to the death of John Moilanen, one of the parties to it, and when appellant was questioned by her counsel concerning it an objection to her testifying was interposed by appellee, based on the provisions of paragraph 1678, Revised Statutes of 1913, which reads as follows:

"In an action by or against executors, administrators or guardians, in which judgment may be rendered, for or against them as such, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate or ward unless called to testify thereto by the

opposite party or required to testify thereto by the court; and the provisions of this section shall extend to and include all actions by or against the heirs, devisees and legatees or legal representatives of a decedent arising out of any transaction with such decedent.''

At the suggestion of the court that other witnesses to the transaction, if there were any, testify first in order that it might determine whether it could exercise its discretion relieving appellant from the bar of this statute, the depositions of Annie Murto of Bruce Crossing, Michigan, and of H. Woullet of Detroit, Michigan, were read in evidence. It appears from the testimony of the former, who lived in Miami from the latter part of June, 1917, to November 28, 1917, and saw appellant and John Moilanen almost daily during this time—the three living at the same rooming-house—that Alma Johnson loaned John Moilanen $500 on March 5, 1917, $250 on May 18, 1917, and $50 on November 30, 1917; that Alma Johnson and John Moilanen both told her of these loans. In his deposition H. Woullet, who lived in Miami in 1916, 1917, 1918, and part of 1919, testified that he was acquainted with both Alma Johnson and John Moilanen and had known the latter since 1915; that John Moilanen told him in their room at Miami that Alma Johnson loaned him (Moilanen) $500 on March 5, 1917, and showed him (Woullet) a check for this amount, saying as he did so that it was given him by Alma Johnson and he was going to buy lots in Superior with it. In response to the court's query as to whether they had the check, appellant's counsel stated that they knew nothing of any check. It appeared from the deposition of Richard T. Lobb of Superior, Arizona, that John Moilanen purchased from him two lots and a house in the town of Superior, and paid therefor $500 on March 5, 1917, $250

on May 18, 1917, $250 on September 1, 1917, and $250 on November 1, 1917, a total of $1,250 and that he took the deed to the same in his name.

Appellant contends that these depositions "alone support every material allegation alleged in the complaint, regardless of the plaintiff's testimony," and that it was therefore an abuse of discretion not to permit appellant to testify following their introduction. It is not questioned, however, that under the clause in paragraph 1678, above, reading, "or required to testify thereto by the court," it was within the discretion of the trial court to refuse her permission to testify in the first instance, but the contention is that the court could not arbitrarily deny her this right after the terms of the transaction upon which her cause of action is based was proven by the testimony of other witnesses. In substantiation of this position, she cites *Goldman* v. *Sotelo,* 7 Ariz. 25, 60 Pac. 696, in which this court, in commenting on the ruling of the trial court permitting the plaintiff to testify, said that the same facts had been testified to by two other witnesses and consequently there was no abuse of discretion in admitting the testimony of the plaintiff. From this it would appear that the facts to which the two witnesses and the plaintiff Sotelo testified were the same, and not that the plaintiff testified to the transaction itself and the two witnesses to an admission of it by the deceased, Wormser. In refusing appellant permission to testify in this case, however, it was observed by the trial court that the witness Annie Murto arrived in Miami some time after it was alleged the first two loans were made; that she left there on November 28th, two days previous to the alleged making of the last one, which rendered it impossible for her to have had personal knowledge about it; and that all she knew of the first two was what the appellant and deceased had told

her. In referring to the testimony of H. Woullet, the court said:

That he "bases his whole statement upon the proposition that he saw a check which Moilanen exhibited to him for $500, which was the only transaction he knows anything about; and the inference must necessarily be from a reading of that deposition that it was this plaintiff's check, you can't help but indulge in that inference when you read the deposition; that he did not see the money; that he saw the check, which he says the plaintiff gave him. In view of that situation I hardly see what we are going to do with the statement which you make, which, of course, is not evidence, but I take it you know what your case is, that you know nothing about a check, if one was ever signed up you know nothing about it. It absolutely invalidates the merits or the practical worth of the two depositions, which you must depend upon before I can exercise the discretion given me to allow her to testify to statements made by deceased persons."

Keeping in mind the purpose of paragraph 1678, above, the ruling of the trial court denying appellant permission to testify cannot, under the evidence, be construed as an abuse of discretion. In *Costello* v. *Gleeson*, 15 Ariz. 280, 138 Pac. 544, this court in considering the purport of this paragraph which appeared in the statutes of 1901 as paragraph 2536 and in substantially the same language, said:

"The general rule is that all parties are competent witnesses in their own behalf, but this statute makes an exception to the rule where one of the parties is an administrator, executor or guardian, and judgment may be rendered for, or against, him as such. Neither party is allowed to testify as to any transaction with or statement by the testator, intestate or ward in such a case, unless he is brought within one of the two exceptions—that is, called to testify thereto by the opposite party, or required to testify thereto by the court. To adopt without exception the maxim that 'The mouth of one party being closed by death, the mouth of the other is closed by the law,'

would, in some instances, promote justice by preventing the enforcement of unjust claims against the estates of deceased persons, but, in others, would defeat justice by rendering it impossible to enforce just claims; while to allow the living to testify under such conditions without restriction would give him undue advantage over the estate of the deceased party, and invite the commission of perjury by dishonest persons in the assertion of unjust claims and proof of the same by their own testimony. The unwisdom of adopting either extreme being apparent, the legislature provided that parties could testify in such cases when required to do so by the court. By this provision discretionary power is conferred on the trial court to determine the competency of parties as witnesses to transactions with or statements by the deceased in cases where the opposite party is an administrator, executor or guardian, and judgment may be rendered for or against him as such.''

The only testimony other than that of statements of the deceased was the reference to a check by the witness Woullet, but this does not establish the fact that it was the check of appellant, though such an inference might be indulged from a reading of the deposition were it not for the avowal of her counsel that they knew nothing about any check. If appellant advanced the $500 in the form of a check drawn on her account, it would appear as if she would have known about it and been able to make proof of it. The canceled check itself, or perhaps the bank accounts through which it went, would doubtless have enabled counsel to make a different avowal. As the court viewed it, the lack of any knowledge whatever of the check on the part of the one who is supposed to have drawn it renders the testimony of the witness Woullet regarding it of no value as an independent item of evidence. Eliminating this then, there remains only the evidence of the admissions of the deceased, sworn to by the witness Annie Murto. Re-

membering that the purpose of paragraph 1678, above, is to place, so far as possible, executors, administrators, and guardians in actions in which judgment may be rendered for or against them as such, on the same plane as the other party to the suit, it is apparent that a trial court, upon, whose wise use of its discretion so much depends, should weigh very carefully all testimony concerning admissions of the deceased whose mouth is closed in death before allowing them to serve as a basis for permitting the living party to give his version of the transaction out of which the action arose, or else the statute will fail in the accomplishment of that which gave it life. We do not say that evidence of admissions against interest of a deceased person as to a transaction in controversy should not be received, nor that in some instances they might not serve as a basis for the exercise by the court of its discretion to permit the living party to give his version of a transaction upon which an action might be based, yet the possibilities of fraud and perjury are so great, if the bars are thrown down, that it is incumbent on the trial court to act with the greatest precaution in order that estates of deceased persons may be protected against unjust claims. We agree with the following statement of the Supreme Court of Colorado in *De Monco v. Means,* 47 Colo. 457, 107 Pac. 1107:

"The evidence mainly relied on to establish the existence of the indebtedness was admissions and statements alleged to have been made by the deceased to third parties. Such evidence has frequently been characterized by courts as weak and unsatisfactory, and in some cases it is held that such admissions are insufficient proof to establish a claim against an estate; and while this last statement has not as yet received the entire approval of this court, the first seems to have been accepted as well as the rule that the evidence to support a claim against an estate should be clear and convincing as to its existence as

well as the amount of the claim. *Clarke* v. *Estate of David Roberts, Deceased,* 38 Colo. 316 [87 Pac. 1077].''

A reading of the entire record does not justify this court in holding that the trial court, in whom has been lodged by statute the power to decide the competency of appellant's testimony, abused its discretion in exercising it against her. It is only where it is clear that such discretion has been abused that this court could interfere.

The judgment is affirmed.

ROSS, C. J., and FLANIGAN, J., concur.