AHLQUIST, Respondent, *v.* PINSKI, Appellant.

No. 8711

Submitted September 25, 1947. Decided October 16, 1947.

185 Pac. (2d) 499

Mr. J. H. Corcoran and Mr. E. J. McCabe, both of Great Falls, for appellant.

Mr. E. J. Stromnes and Mr. S. M. Swanberg, both of Great Falls, for respondent.

MR. JUSTICE CHOATE delivered the opinion of the Court.

This is an appeal by defendant executor of the estate of Anna Medich Popp, deceased, from a judgment of the district court of Cascade county awarding plaintiff $520, besides interest and costs, for money loaned decedent for which a claim had been presented against decedent's estate and rejected. Defendant denied the making of the loan and asserted a counterclaim against plaintiff in the amount of $900.

In support of her case plaintiff testified to the following facts: That she had loaned Anna Medich Popp, who was her mother, the sum of $520. The loan was made May 1, 1940, while plaintiff was residing with her mother in the latter's home at Great Falls. Plaintiff testified that Mrs. Popp knew that plaintiff had in the neighborhood of $500 of insurance money left her by her late husband and she asked her daughter to lend her that money to which the latter agreed. Plaintiff told her mother that she would make the loan on condition that the money should be repaid either on plaintiff moving away from her mother's premises or at the time of·her mother's death. Mrs. Popp agreed to that and (plaintiff testified) "told me she would repay me either when I left her or when she died. It would be understood I would receive it in the estate." There-

upon plaintiff loaned her mother $520 in cash. On September 1, 1940, plaintiff and her mother "got into an argument" and plaintiff moved away from her mother's residence. On the day she moved plaintiff had a conversation with her mother about repayment of the loan. Her mother first spoke to plaintiff in the Slovac tongue and "told me not to take anything that belonged to her [the mother]." Plaintiff then asked her mother "in American" if she would let her have the money she had loaned to her to which the mother replied: "I owe you $520 and I will pay you every cent of it." Her mother did not, however, then or at any other time, repay the loan or any part of it.

Upon Mrs. Popp's decease plaintiff presented a creditor's claim against her estate for the amount of said loan, which claim was disallowed by defendant executor and the present action was instituted to recover thereon.

Prejudicial error by the trial court is predicated on the following assignments: 1. In permitting plaintiff over objection to testify to the fact of making the loan in question to her mother, in that said witness was incompetent to testify to such fact under section 10535, Revised Codes 1935, and that no sufficient foundational evidence was introduced to qualify the witness to so testify.

Section 10535 (subdivision 3) reads in part as follows: "The following persons cannot be witnesses: * * * 3. Parties or assignors of parties to an action or proceeding, or persons in whose behalf an action or proceeding is prosecuted against an executor or administrator upon a claim or demand against the estate of a deceased person, as to the facts of direct transactions or oral communications between the proposed witness and the deceased, excepting when the executor or administrator first introduces evidence thereof, *or when it appears to the court that, without the testimony of the witness, injustice will be done.*" (Emphasis ours.)

It is apparent that plaintiff's testimony summarized above

358

■ comes within the prohibition of section 10535, subdivision 3, unless it is rendered admissible by the proviso italicized above. This court has on several occasions considered the applicability of the statute above quoted to differing states of fact. In Sharp v. Sharp, 115 Mont. 35, 139 Pac. (2d) 235, we laid down the following rules: That the application of section 10535 must vary with the circumstances presented to the trial court and that in reviewing the trial court's decision the Supreme Court should reverse only when it is clear that an error has been made and that this court must examine the record for testimony upon which it is reasonable to conclude that there was credibility in such party's claim. To the same effect is Roy v. King's Estate, 55 Mont. 567, 179 Pac. 821. In Wunderlich v. Holt, 86 Mont. 260, 283 Pac. 423, 425, we said: "It is lodged in the sound discretion of the court to determine in each case, as it develops during the trial, whether the testimony is necessary to enable the plaintiff to make out a prima facie case, and thus prevent an injustice."

In Pincus v. Davis, 95 Mont. 375, 384, 26 Pac. (2d) 986, 990, this court used the following language, later quoted with approval in Phelps v. Union Central Life Ins. Co., 105 Mont. 195, 71 Pac. (2d) 887; "The trial court should not admit the testimony of such a witness until sufficient other testimony has been admitted to warrant the court, in the exercise of its discretion, to render a ruling in favor of the questionable testimony. The court must exercise this discretion with caution and reasonable strictness, and not so loosely as to infringe on the general rule, unless it reasonably appears that otherwise injustice will result, and therefore the exception rather than the rule should apply. Wunderlich v. Holt, 86 Mont. 260, 283 Pac. 423 [424]; Langston v. Currie, 95 Mont. 57, 26 Pac. (2d) 160."

The question for determination is therefore: Was sufficient ■ foundational evidence introduced to warrant the trial court in exercising its discretion in favor of the testimony in question and permitting plaintiff to testify concerning her con-

versations with her mother relative to the loan. The supporting evidence consists chiefly of the following testimony given by Marie Wallenberg: That about September 1, 1940, witness and her husband were helping plaintiff move her belongings from her mother's residence; that on that occasion plaintiff's mother came into the house and talked with plaintiff in witness's presence; Mrs. Popp talked first in Slovak (or some other language with which witness was not familiar); then plaintiff said to her mother, "Could I have the money you owe me, mother?" to which Mrs. Popp replied in English, "Yes, I owe you $520 and you will get every cent of it." We think it clear that this testimony *did* tend to establish plaintiff's claim that her mother owed her $520 and had promised to repay it. However, Mrs. Wallenberg's testimony did *not* tend to establish a number of other matters which were necessary to be proven in order to entitle plaintiff to recover. It did not tend to show when or where the loan was made, how the indebtedness was created, when the loan was to be repaid, whether or not it was yet due or when, how, or from whom plaintiff might expect "to get every cent of it." All these matters were supplied by the plaintiff's testimony and the record shows that she could not have furnished any other evidence, oral or written, or produced any other witnesses to prove said facts.

It is our opinion that the testimony given by Marie Wallenberg was insufficient standing alone to establish plaintiff's claim but that it was sufficient to justify the court in concluding as it did that without plaintiff's testimony injustice would be done. Wunderlich v. Holt, supra. There was therefore no abuse of discretion on the part of the trial court in admitting plaintiff's testimony concerning her conversations with her mother about the making and payment of the loan.

2. It is next contended that the trial court erred in admitting in evidence a telegram received by plaintiff from her mother reading, "Received money okay." Defendant's answer set up a counterclaim against plaintiff for $900 in which it is

alleged that during her lifetime deceased made a gift causa mortis to plaintiff and her sister in the amount of $2,100. This gift was allegedly revoked by decedent and $900 of said original gift of $2,100 had never been repaid. Upon this issue which was decided by the jury in her favor, plaintiff testified that she repaid the entire $2,100 to her mother and that in order to get an acknowledgement from her mother that the money had been paid (so that plaintiff might satisfy Rose Wentworth, her sister, of that fact), plaintiff testified that she wrote a letter to her mother in reply to which she received the above telegram. Counsel for defendant objected to the offer in evidence of this telegram on the ground that "there is no sufficient foundation laid for its introduction" and that "it purports to be an answer to a letter written by plaintiff and the letter is not in evidence." The record on this subject is somewhat confusing in that while counsel objected to an alleged "lack of sufficient foundation" the court said to counsel, "You have no objection to the foundation of the telegram?" to which counsel replied, "No, as far as the telegram itself is concerned." Aside from the above statement of counsel which appears to constitute a waiver of his objection to the foundation of the telegram, and assuming that it was error for the trial court to admit the telegram without requiring production or explanation for nonproduction of the letter to which the telegram was a reply, we do not consider the error of sufficient gravity to warrant interference with the judgment. It would of course have been a simple matter to have interrogated plaintiff about the letter as in all probability she no longer had the document or a copy thereof in her possession and on proof of that fact, secondary evidence of its contents would have been admissible.

There was also ample evidence in the record without the telegram to warrant the jury in finding for plaintiff on the issue of the $900 counterclaim which plaintiff testified she had paid to her mother. Under the condition of the record we con-

clude that no reversible error was committed in admitting the telegram in question.

3. This specification relates to the giving of instruction No. 4. By this instruction the court told the jury that if they believed from the evidence that at the time of her death, decedent had a claim against the plaintiff as alleged in defendant's answer and counterclaim, such claim was subject to probate proceedings only in the state of Montana and in the county of Mrs. Popp's residence at the time of her death. The complaint alleges and defendant's answer and counterclaim admit that Mrs. Popp died testate, a resident of Cascade county, Montana, and that her estate is being probated in that county. Decedent's claim against her daughter was personal property the situs of which for probate purposes was at decendent's domicile in Montana.

Plaintiff's instruction No. 4 was therefore a correct statement of the law and it was applicable to the facts of the case by reason of the following situation which appears from the record: Defendant's answer had set up as a counterclaim an alleged indebtedness claimed to be owing to Mrs. Popp's estate by the plaintiff, in the sum of $900. This counterclaim was based upon an alleged gift causa mortis which Mrs. Popp had given plaintiff and her two sisters and which decedent claimed she had revoked. The record discloses that prior to decedent's death and while she was temporarily in California she had instituted a suit against plaintiff in that state to recover this gift causa mortis which she had revoked. The record shows that at the time the inventory and appraisement of decedent's estate was being prepared, Mr. Corcoran, of counsel for defendant, told the appraisers about this law suit in California which involved the same $900 which was pleaded by defendant as a counterclaim in this action. Counsel then expressed his professional opinion that there should be an ancillary probate of Mrs. Popp's estate in the state of California "as to any amount in this law suit, in the chose in action—it was not within the state of

Montana.'' The record further discloses that the item of $900 in question was never listed in the inventory and appraisement of Mrs. Popp's estate in Montana. This situation gave rise to the question of law upon which the court properly instructed, namely, if the plaintiff owed the decedent $900 at the time of the latter's death, did that indebtedness constitute property belonging to the estate of Mrs. Popp which should have been included in the inventory and appraisement of her estate in Montana, or could said indebtedness be established only by ancillary probate proceedings in the state of California upon Mrs. Popp's estate?

Instruction No. 4 correctly told the jury that said claim was subject to probate proceedings in the state of Montana and in the county of Mrs. Popp's residence.

A further question, however, is presented in view of the ▮ giving of instruction No. 4. Could that instruction have been misunderstood by the jury as telling them that because the inventory and appraisement of Mrs. Popp's estate did not include the $900 which defendant sought to counterclaim against plaintiff, *therefore* defendant executor could not recover upon said counterclaim? Had instruction No. 4 been given without any other instruction upon this phase of the case, we think it might have mislead the jury into believing that defendant's counterclaim was barred because of the failure to include it in the inventory of Mrs. Popp's estate. Any such misunderstanding was, we think, guarded against by the giving of instructions Nos. 6 and 7. By instruction No. 6 the court told the jury that unless they believed from the evidence that plaintiff had repaid the $900 to her mother, then they should find in favor of the defendant on the counterclaim. Instruction No. 7 furthermore told the jury that if they believed that the plaintiff's mother had a valid claim against plaintiff in the amount of $900 they should offset the $520 sought to be recovered by plaintiff against this $900 and render a verdict in favor of the defendant for $380. They were also told that if they believed

the plaintiff did not lend her mother the sum of $520 and that she did not repay her mother the sum of $2,100 stated in defendant's counterclaim, their verdict should be in favor of the defendant in the amount of $900. We think the above instructions sufficiently indicate the scope and meaning of instruction No. 4.

We have examined appellant's other contentions and find ▆ them without merit. The slight difference in plaintiff's testimony on direct and on cross-examination in relation to her request to her mother for a return of the money is not significant. "A variation in words used by witness which convey the same meaning does not indicate falsity of testimony * * * but shows only an intention to convey the meaning without attempting to state the exact expression or words used." Walsh v. Kennedy, 115 Montana 551, 147 Pac. (2d) 425.

The fact also that testimony such as that given by Marie ▆ Wallenberg with respect to the making of statements against interest by a person since deceased is weak and should be received and weighed with caution is well-settled by decisions of this and other courts. However, it is equally well-settled that such testimony is admissible to be considered as any other fact in the case. Roy v. King's Estate, supra, and cases cited.

"The general rule is that a declaration against the interest of the person making it is admissible in evidence notwithstanding its hearsay character, if the declaration is relevant and the declarant has died." 20 Am. Jur., page 467, sec. 556, citing numerous authorities in the accompanying case note No. 13.

Furthermore this evidence went in without objection by the defendant and its value was for the jury to determine. We find nothing inherently unworthy of belief in plaintiff's evidence and we deem it quite sufficient to sustain the verdict.

Judgment affirmed.

Mr. Chief Justice Adair, Associate Justices Angstman and Metcalf, concur.

Mr. Justice Gibson did not participate for the reason that

364

it was heard prior to the date Mr. Justice Gibson became a member of this court.