COX, Appellant, v. WILLIAMSON, et al., Respondents.

No. 8977.

Submitted December 5, 1950. Decided February 13, 1951.

227 Pac. (2d) 614.

Mr. Wellington D. Rankin, Mr. Arthur P. Acher, Mr. Ralph J. Anderson and Mr. Albert C. Angstman, all of Helena, for appellant.

Mr. Oscar O. Mueller and Messrs. DeKalb, Dockery and Symmes, all of Lewistown, for respondent.

Mr. Anderson, Mr. Angstman, Mr. Mueller and Mr. H. Leonard DeKalb argued orally.

MR. JUSTICE BOTTOMLY:

This is an appeal from a judgment of dismissal.

John W. Seiden, a long-time and highly respected resident and businessman of Lewistown, Fergus county, Montana, died in that city on November 24, 1947, leaving will dated August 27, 1947. Therein testator devised and bequeathed certain real and

personal property to various beneficiaries, among them the plaintiff, Edna Cox, his housekeeper, to whom he devised and bequeathed his residence particularly described as lot 8 in block 8 of Lehman's Addition No. 2, and lots 7 and 8 in block 5 of Sunnyside Addition to the city of Lewistown, together with all the furniture, fixtures and other property belonging to and used in connection with the residence.

In her complaint plaintiff pleads: That in June 1943, she and testator entered into a certain contract whereby she was to devote her time solely and exclusively to the making of a home for testator, keeping house, cooking, mending, washing, caring for testator during illness, and looking after his general welfare and comfort as long as he should live; that on his part testator agreed with plaintiff that if she would perform such acts and duties he would pay her the sum of $50.00 per month, and that upon his death he would leave a will, leaving to her testator's residence, together with the furniture and fixtures thereunto belonging and also leave to her the sum of $5,000.00; that plaintiff accepted the terms and conditions of said contract and has fully and faithfully performed all the terms and conditions thereof on her part to be performed; that in his lifetime testator paid to plaintiff $50.00 per month and upon his death he left a will giving to plaintiff his residence, together with the furniture and fixtures thereunto belonging, but that his will failed to bequeath to plaintiff the said sum of $5,000.00; that testator's estate is solvent and after all debts and costs of administration are paid, there will be property remaining therein to be distributed; that plaintiff is entitled to share in the estate as a devisee and legatee of the testator's residence and the furniture and fixtures belonging thereto, and of a cash bequest of $5,-000.00, and that plaintiff is entitled to a decree so adjudging and carrying into effect the full performance of such claimed contract.

Upon the denial of defendants' general demurrer to the complaint, defendants answered denying the making of the claimed

contract or agreement pleaded and alleging that in January 1941 the testator entered into an oral agreement with plaintiff, whereby plaintiff was employed by testator as a housekeeper for the agreed compensation of $50.00 per month, including board and lodging; that at a later period and during the month of August 1947 and without any agreement whatever and wholly as a matter of generosity the testator made provision in his will devising unto plaintiff the house and lot wherein testator resided, together with the furniture and fixtures therein contained. Defendants denied that by any agreement, or other arrangement whatever, at any time, or at all, was the testator to leave to plaintiff, by his will, the sum of $5,000.00, or any other sum of money whatever, and defendants further alleged that the agreement to pay the sum of $50.00 per month for plaintiff's services has been fully paid and discharged and that board and lodging was furnished plaintiff up to the time of testator's death as agreed.

Plaintiff's reply admits that plaintiff was working for testator in January 1941 under an oral agreement whereby she was to receive $50.00 per month as housekeeper plus board and lodging, and alleges that this agreement was changed and modified as alleged in her complaint; admits in August 1947 the testator made a will wherein he devised plaintiff his house and lot together with the furniture and fixtures therein, and admits plaintiff received as a part of her compensation for services rendered during her employment by testator $50.00 per month plus board and lodging.

The cause was heard by the court without a jury. Plaintiff and four other witnesses testified on her behalf. At the conclusion thereof, the court sustained defendants' objection embodying the provisions of R. C. M. 1947, sec. 93-701-3, subd. 3, and entered decree as follows: ''This cause came on for trial before the court sitting without a jury on the 5th day of January, 1950, plaintiff appearing with her counsel and her witnesses and defendants appearing with their counsel, and testimony

having been received, apparently designed to lay a foundation for the testimony of plaintiff, and an objection having been made as to the competence of plaintiff to testify concerning oral conversations and direct transactions had by plaintiff with decedent, John W. Seiden, and the court having sustained the objection for the reason that no creditable foundation had been laid by the testimony of other witnesses to make it appear to the court that without the testimony of plaintiff an injustice would be done, and the plaintiff having thereupon made an offer of proof which was objected to and the objection sustained, and plaintiff having rested her case, now, on motion of the attorneys for defendants, plaintiff's complaint is hereby dismissed and defendants are awarded their costs and disbursements herein amounting to the sum of $10.50.''

From the decree plaintiff has appealed specifying as error the exclusion of her offered testimony and entering of the judgment of dismissal.

The testimony of plaintiff's first witness, Roland G. Bennecke, was substantially to the effect that he had resided in Lewistown 26 years; that he had known plaintiff for six or seven years and was very well acquainted with John W. Seiden, deceased, and had frequently visited him; that the physical condition of deceased from 1943 to the time of his death hadn't been very good and deceased was confined to his home periodically and was up and down during 1947; that deceased never discussed with witness his arrangements with Mrs. Cox; that deceased told witness that he, deceased, thought he had his affairs all arranged so that the store would go to the boys, his insurance would go perhaps to his wife's relations, and the house and contents were to go to Mrs. Cox, and $5,000.00, deceased told witness that on three different occasions; that witness visited deceased on Thursday mornings—these conversations were in October and November 1947; witness couldn't specify particular dates; no one else was present during these conversations. On cross-examination Mr. Bennecke testified to the effect that he was 73 years of age, in

good health; that he spent 35 to 45 minutes with deceased at such visits; that he was there primarily to discuss fraternal matters with deceased; that decedent's mind was very bright and clear at all times; that deceased did not say how the provisions for Mrs. Cox were to be made, but that it was to go to Mrs. Cox; that deceased did not inform witness when the arrangements were made, nor about any salary or arrangements deceased had with Mrs. Cox; that deceased did not tell witness anything about any contract or agreement with Mrs. Cox; at no time did deceased mention to witness that the purported statements of deceased were pursuant to any agreement or arrangement he had with Mrs. Cox; that witness had not discussed this matter with anybody; that witness knew deceased very intimately, knew his general character, and knew that when deceased gave his word it was good; that deceased was a very truthful man and if he said anything, you could rely on it.

Maud Spurgeon testified substantially to the effect that she had lived next door to the residence of deceased since 1943; that she had known Mrs. Cox since that date; knew the kind of work she was doing and that from her experience and in her opinion the reasonable value of such services to deceased was $150.00 a month; that witness had been very intimate with Mrs. Cox over the years and one of Mrs. Cox's best friends; that she was in and out of the Seiden house and visited with Mrs. Cox nearly every day; that she had visited with deceased and he told witness that Mrs. Cox had been so faithful that he would make it well worth Mrs. Cox's while for the time she had been with him; that there was no need of a nurse's care for deceased until the last three months before his death.

Mr. T. J. Graham testified in substance that he had known deceased the last 15 years quite intimately; that he had called at the home of deceased and had performed errands for him; that at one time the last year before he passed away deceased made the remark to witness that he, deceased, was going to give Mrs. Cox the house and the furniture and some other things; witness did not

know what the other things were; that Mrs. Cox was back and forth during this conversation.

Edna Cox testified in regard to her employment and as to what she did during the years from 1943 until the death of deceased; that she had done all the work about the home since 1944; that deceased was confined to his bed from October 1947 most of the time but would get up and go down to the store once or twice, and then would not get dressed for several days; then he would not do any work; he just went on some special business and back and right to bed; that she had taken care of four different sick people in Spokane, and her mother, and then went to care for Mrs. Seiden in September 1940; that Mrs. Seiden died January 14, 1941, and that she continued on in the employ of Mr. Seiden until his death November 24, 1947. The witness was then asked:

"Q. Did you have a conversation with Mr. Seiden sometime in the summer of 1943 relative to your continuing on in his home? A. Yes, sir.

"Q. And about when did that conversation occur? A. That was after the trip to Missoula and Helena.

"Q. Do you recall the month? A. It was June.

"Q. Do you recall whether it was the latter part of June or early? A. I think it was in the early part of the month.

"Q. You don't have the date of it, however? A. No, I don't.

"Q. Now, after I ask you this question wait. State what that conversation was?"

Defendants interposed the objection that there was no proper foundation evidence to warrant the admission of the alleged conversation with decedent.

Other preliminary questions were then asked of witness Edna Cox who testified that during the time from 1943 to 1947 she was offered other employment at an increase of salary, at several different places; such salary offer was more than she was getting at Mr. Seiden's and had a better future, but she stayed with Mr. Seiden because she had agreed to and because she ex-

pected to receive some additional compensation over and above the $50.00 a month. The court then sustained the objection, rejected plaintiff's offer of proof, and thereafter rendered the judgment complained of.

The controlling statute and substantive law is R. C. M. 1947, section 93-701-3, as follows: "Persons who cannot be witnesses. * * * 3. Parties or assignors of parties to an action or proceeding, or persons in whose behalf an action or proceeding is prosecuted against an executor or administrator upon a claim or demand against the estate of a deceased person, as to the fact of direct transactions or oral communications between the proposed witness and the deceased, excepting when the executor or administrator first introduces evidence thereof, or when it appears to the court that, without the testimony of the witness, injustice will be done."

Here there was no testimony introduced on behalf of the executor or other defendants. Therefore, the first exception of the above statute is not involved. The second exception, "when it appears to the court that, without the testimony of the witness, injustice will be done," leaves the admission or rejection of the testimony to the sound discretion of the trial court. Of course the action of the trial court is subject to review to determine whether that court abused its discretion in a given case. This court indulges the presumption, upon a review, that the judgment is correct. Every legitimate inference will be drawn from the evidence to support this presumption and this court has repeatedly stated that each case such as this is to be treated specifically and upon its own peculiar facts and circumstances.

The question here presented is whether the trial judge abused his discretion in refusing to allow the plaintiff to testify as to the contract alleged to have been entered into by her with decedent in June 1943 and in rejecting plaintiff's offer of proof thereof.

It should be noted that at the close of plaintiff's foundation

testimony, when the objections were made, the only testimony that could possibly tend to lay the necessary foundation was the testimony of witness Bennecke and Witness Graham. The former was, "Yes, he said he thought he had his affairs all arranged so the store would go to the boys; his insurance policies would go to, not his relatives, so far as I understand he had no relatives, perhaps to his wife's relatives, and the house and contents were to go to Mrs. Cox and five thousand dollars, he told me that on more than one occasion." The latter testified: "He made the remark he was going to give Mrs. Cox the house and the furniture and some other things, that's all."

From none of the witnesses for plaintiff in the foundation testimony is there a word of any kind denoting any expression or declaration by deceased that any agreement or contract had been entered into by deceased with plaintiff, or that any arrangement in regard to intending to leave any property to plaintiff was the result of or connected in any manner with any understanding or arrangement with plaintiff. Such declarations, if made, were only to the effect that deceased was going to do something or dispose of his property in a certain way. There is absolutely no evidence in the record of any declaration or admission of any contractual obligation with plaintiff by deceased. This court has repeatedly said that "Declarations against interest are said to be the weakest and least satisfactory of any evidence in persuasive value." Sanger v. Huguenel, 65 Mont. 236, 211 Pac. 349; Escallier v. Great Northern Ry. Co., 46 Mont. 238, 127 Pac. 458, Ann. Cas. 1914B, 468; Langston v. Currie, 95 Mont. 57, 26 Pac. (2d) 160, 165.

The statement of this court in Langston v. Currie, supra, is especially applicable here. This court there said: "The declarations testified to on behalf of each of the appellants as having been made by the deceased did not in any instance contain an admission by the decedent of the existence of any contractual obligation owing by him to either of them, as alleged in their respective pleadings. Declarations of this character, standing

alone or coupled with acts of performance under the alleged contract, do not establish the contract alleged. Clark v. Clark, 74 Utah 290, 279 Pac. 502, 503; Allen v. Sackett, 76 Colo. 431, 231 Pac. 1110; Timmerman v. Whiting, 118 Minn. 398, 137 N. W. 9; Moore v. Moore, 58 Neb. 268, 78 N. W. 495. As stated above, admissions against interest of a deceased person are said to be the weakest and least satisfactory of any evidence in persuasive value. Escallier v. Great Northern Ry. Co., supra; Sanger v. Huguenel, supra.''

''Before a court of equity will specifically enforce a parol contract on the ground of part performance, the contract must be established to the satisfaction of the court by clear and unequivocal proof.'' 101 A. L. R. 998, note (b) and cases cited.

The purpose of the dead man's statute is to prevent the surviving party or parties from having the benefit of his or their own testimony where by reason of the death of his adversary, his representative is deprived of the decedent's version of the transaction or statement. See 58 Am. Jur., Witnesses, secs. 214, 215, pp. 146, 147; Leffeck v. Luedeman, 95 Mont. 457, 463, 27 Pac. (2d) 511, 91 A. L. R. 286.

Most states have a dead man's statute, but from our research very few have a statute similar to our subdivision 3 of section 93-701-3, R. C. M. 1947, which leaves the admission or nonadmission of direct oral communications to the sound discretion of the trial court in such cases and to be admitted only when in the exercise of such sound discretion so reposed in it, it appears to the court that without the testimony of such witness, an injustice will be done.

The supreme court of Arizona in interpreting their statute which is somewhat differently expressed, have reached the same conclusion as this court. Stewart v. Schnepf, 62 Ariz. 440, 158 Pac. (2d) 529, 539; Goldman v. Sotelo, 7 Ariz. 23, 60 Pac. 696; Johnson v. Moilanen, 23 Ariz. 86, 201 Pac. 634.

This court has laid down the rule in clear and concise language that under the provisions of R. C. M. 1947, section 93-701-3,

subsection 3, in cases of this character, a party to such an action may not testify as to the facts of direct transactions or oral communications between himself and the deceased, except when, without the testimony of the witness, injustice will be done. The trial court should not admit the testimony of such a witness until sufficient other independent testimony has been admitted to warrant the court, in the exercise of its discretion, to render a ruling in favor of the questionable testimony. The court must exercise this discretion with caution and reasonable strictness, and not so loosely as to infringe on the general rule, unless it reasonably appears that otherwise injustice will result, and therefore the exception rather than the rule should apply. See Sharp v. Sharp, 115 Mont. 35, 39, 139 Pac. (2d) 235; Langston v. Currie, supra; Pincus v. Davis, 95 Mont. 375, 384, 26 Pac. (2d) 986.

Mr. Chief Justice Callaway, speaking for this court in regard to this section and the declarations of a deceased, said: ''When should a court determine to admit the testimony of the survivor against one whose 'mouth is stopt with dust'? Manifestly only when it appears to the court that, in view of all the surrounding facts and circumstances, injustice will result if the testimony is excluded. While undoubtedly the power to admit and reject such testimony is reposed wisely in the sound discretion of the trial court, it cannot be too careful in exercising that discretion. Every judge has observed the freedom with which a witness testifies who knows he cannot be contradicted. Courts should scrutinize with more than usual care the quality of proof presented in such cases, and when the testimony relates to oral communications between the witness and the deceased, it must be viewed with caution. Section 10672, Rev. Codes 1921; Gauss v. Trump, 48 Mont. 92, 135 Pac. 910; Escallier v. Great Northern Ry. Co., 46 Mont. 238, 127 Pac. 458, Ann. Cas. 1914B, 468; McCrimmon v. Murray, 43 Mont. 457, 117 Pac. 73; Gray v. Grant, 62 Mont. 452, 206 Pac. 410. In the Escallier Case, Mr. Chief Justice Brantly, in commenting upon the declarations of deceased persons, said:

" 'Speaking generally, this character of evidence is the weakest and least satisfactory of any in persuasive value. "With respect to all verbal admissions, it may be observed that they ought to be received with great caution. The evidence, consisting as it does in the mere repetition of oral statements, is subject to much imperfection and mistake; the party himself either being misinformed, or not having clearly expressed his own meaning, or the witness having misunderstood him. It frequently happens, also, that the witness by unintentionally altering a few of the expressions really used, gives an effect to the statement completely at variance with what the party actually did say." 1 Greenleaf on Evidence (16th Ed.), sec. 200. * * * Though the witness who testifies to the oral statement may be honest, his memory may be at fault, or he may have failed to comprehend and interpret the statement as it was intended to be understood by the speaker. * * * Moreover, so easy is it to fabricate such evidence that there is strong temptation to a dishonest, interested witness to do so. 17 Cyc. 806, and notes. After enumerating these elements of weakness, the author of the article in Cyc. on this subject, at page 808, remarks: "Exposed to all the infirmities just mentioned is the testimony to oral statements of dead men, which is invariably subjected to the closest scrutiny in view of the impossibility in most cases of convicting the witness of perjury if his testimony is willfully false'."

"And see Sanger v. Huguenel [ante, 65 Mont. at page 236], 211 Pac. 349." Marcellus v. Wright, 65 Mont. 580, 594, 595, 212 Pac. 299, 302.

Compare In re Schinasi's Estate, 139 Misc. 459, 248 N. Y. S. 691, 703, in which the court quoted from Wallace v. Wallace, 158 App. Div. 273, 281, 137 N. Y. S. 43, 49, as follows: " 'Of late years there have been, in the Court of Appeals, a series of cases which have very clearly and positively declared the rules which must govern in determining such a claim, namely, a claim that a decedent made a given contract to dispose of his or her

estate at death in a different manner than he or she attempted to do. (Citing cases.)

" 'Those rules, or the leading ones, may be summarized as follows, viz.: (1) Such a contract must be in writing and the writing produced, or, if ever based upon parol evidence alone, it must be given or corroborated in all essential particulars by disinterested witnesses. (Citing case.)' * * * the contract, so far as the proofs presented show, if there was any contract was oral. To receive any serious recognition of the court it should be written."

This court in Sanger v. Huguenel, supra, 65, Mont. at page 245, 211 Pac. at page 351, quoted with approval from Davis v. Manson, R. I., 102 A. 714, as follows:

" 'The agreement which the complainant is seeking to enforce is in the nature of a testamentary disposition. The rule of law as to the proofs required in such cases is so well settled that there is little necessity for the citation of authorities. * * * Contracts for testamentary disposition are allowed to stand only when established by clear proof. * * * Contracts of the character in question have become so frequent in recent years as to cause alarm, and the courts have grown conservative as to the nature of the evidence required to establish them, and in enforcing them, when established, by specific performance. Such contracts are easily fabricated and hard to disprove, because the sole contracting party on one side is always dead when the question arises.'

"It is again stated that:

" 'The law applicable to a case of this nature must be deemed settled. Proof of a parol agreement that the decedent promised to leave all his property to the plaintiff must furnish all the essentials of a contract, be fair and equitable, and the terms thereof definite and certain, and the agreement must be clearly established by the testimony of disinterested witnesses.' Hanly v. Hanly, 105 App. Div. 335, 93 N. Y. S. 864 * * *." See cases cited therein.

It is unquestionably the law that the proof of such a contract must be clear, cogent, and convincing, and that the making of such an oral contract or agreement must be established by disinterested witnesses. See Andrews v. Aikenis, 44 Idaho 797, 260 Pac. 423, 69 A. L. R. 8.

The words purported to have been used by deceased, as related in the testimony of plaintiff's witnesses, is not the language of contract or agreement, but is only an expression of a thought by deceased as to how he was disposing or going to dispose of his property, which falls far short of and is quite insufficient to make out or prove the elements of an agreement or contract with plaintiff to bequeath to plaintiff a sum of money or any other property. The words purported to have been spoken by deceased are not evidence of an acknowledgment of an indebtedness to be paid by a provision of his will. The record is barren of any evidence in the foundation testimony that the deceased expressed any words that could be interpreted as a promise or an agreement or contract with plaintiff, that the deceased would or had agreed with plaintiff to leave $5,000.00 or any other sum to plaintiff by his will.

Evidence which tends to establish at the most nothing more than an intention on the part of testator to leave to another a certain sum of money by will certainly is not evidence which will support an allegation of an express agreement or contract to do so. Such oral statements, if made, do not amount to a contract to do so.

The record shows clearly that the services rendered to deceased by plaintiff were not of any special or particular or peculiar nature, and were not so alleged to be in plaintiff's complaint. Such services did not require any extraordinary or unusual skill, experience or capacity; they involved no more than doing such things as every domestic does as a part of her ordinary routine of life; they were such ordinary services as any faithful housekeeper would render under like circumstances to a generous employer. Mrs. Cox was paid her wage of $50.00 per month, with

her board commensurate with the household of a fairly wealthy man. She was provided with a fine home in which to live; the home was very well furnished. The deceased provided bountifully for her in his will. By the terms of the will, Mr. Seiden devised and bequeathed to Mrs. Cox his residence, the lot on which it rests and two additional lots, together with all of the furniture, the fixtures and other property belonging to and used in connection with the said residence. The appraisement of the foregoing property filed in the estate values such property at $13,000.00.

The value of plaintiff's services, as testified to by her witness Maud Spurgeon, was $150.00 a month. Certainly there was no showing of, nor under such facts could there be, any injustice to plaintiff by the rulings of the trial court.

From all the facts and circumstances in this record the trial court was justified in sustaining the objection and in denying the offer of proof and dismissing the complaint.

No error appearing, the judgment is affirmed.

MR. CHIEF JUSTICE ADAIR and ASSOCIATE JUSTICES METCALF and FREEBOURN, concur.

MR. JUSTICE ANGSTMAN, dissenting:

I think plaintiff should have been permitted to give her version of the contract alleged to have been made between her and Mr. Seiden. Without it she was unable to make out a prima facie case and that is the test to be applied in determining whether an injustice will be done without such testimony, Roy v. King's Estate, 55 Mont. 567, 179 Pac. 821; Wunderlich v. Holt, 86 Mont. 260, 283 Pac. 423; Rowe v. Eggum, 107 Mont. 378, 87 Pac. (2d) 189, particularly where as in this case there was ample evidence from the witness Roland Bennecke and others from which it was and is reasonable to conclude that there is credibility in plaintiff's claim. Sharp v. Sharp, 115 Mont. 35, 139 Pac. (2d) 235; Ahlquist v. Pinski, 120 Mont. 355, 185 Pac. (2d) 499. Mr. Bennecke testified that on three different occasions Mr. Seiden told

him Mrs. Cox was going to receive the house and contents and five thousand dollars.

My associates stress the weakness of evidence of a party as to communications with one since deceased. In spite of the weakness of such evidence the legislature by Chapter 66, Laws of 1909, now R. C. M. 1947, section 93-701-3, has said that it is proper to receive it "when it appears to the court that without the testimony of the witness injustice will be done." To hold that such evidence is always so weak that it should not be received is to thwart the legislative will.

The question of the admissibility of evidence presents an entirely different question from one going to the weight to be given to it. I think any discussion in this case of the weight of the offered evidence is premature.

The weight of the evidence is determined after it is received and depends much upon the appearance and candor of the witness and her ability to withstand cross-examination. My position is that plaintiff should have been permitted to offer proof of her contract as she alleged it.

Without being permitted to offer proof, her claim is condemned without the opportunity of a hearing, since she could not make out a prima facie case otherwise, and hence I think an injustice is done within the meaning of R. C. M. 1947, section 93-701-3. If this case does not justify admission of evidence of communications with one since deceased, then the last two lines of the above statute are meaningless.

The fact that decedent made some provision for plaintiff in his will is unimportant if in fact there was a promise to give more in consideration for the services rendered. I think a new trial should be had and the offered evidence received.

Rehearing denied March 2nd, 1951.