ASSUMPSIT.

*Case* 102.

*June* 21.

Case stated.

# Bull *vs* McCrea.

APPEAL FROM THE JEFFERSON CIRCUIT.

*Assumpsit.  Variance.*

CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

THIS action of assumpsit was brought by E. McCrea, a free woman of color, against N. Bull, upon an alledged promise of Bull to support her during her life, and to pay and supply to her such sum or sums of money as would be sufficient for the procurement of comfortable food, raiment, fuel, light and lodging, so long as she should live, and at such times as should be necessary, &c. The ground laid for the promise is, that the defendant being indebted to the plaintiff in the sum of $——, for work and labor done, &c., at his request, in consideration that the plaintiff would release and discharge the said defendant from the payment of said large sum, viz: the sum of $——, undertook and promised that he would support her, &c. And the declaration avers that the plaintiff did execute and deliver the release, but that defendant, though often requested, hath not supported, &c., nor paid the sum necessary

for plaintiff's support as aforesaid. A second count alledging the indebtedness as in the first, and that the plaintiff was about to sue, &c., states the consideration of defendant's promise to support the plaintiff, &c., to consist in the agreement of plaintiff to forbear suing the defendant then and at any time and forever, on her said claim.

The defendant filed demurrers to each count of the declaration, and also, at the same time, the plea of non-assumpsit. The demurrers were overruled, and a verdict of $75 having been found for the plaintiff, a new trial was granted on her motion, on the ground that the damages were too small. On the second trial the jury found $700 for the plaintiff. And the defendant's motion for a new trial having been overruled, the case comes to this Court upon the defendant's exceptions to the granting of the new trial after the first verdict, and to the refusal of a new trial after the last verdict. The defendant also insists upon his demurrers in this Court. It may be assumed on the face of the declaration, that the alledged promise was in parol, since if it had been in writing it must have been expressly declared on, under our statute placing unsealed contracts on the footing of specialties. And as under the statute referred to, assumpsit could not be maintained if the contract were in writing, we are of opinion that the question whether the contract should have been in writing, under the statute of frauds, may properly be made on demurrers to the declaration.

The statute of frauds does not alter the mode of pleading, and therefore, this question did not arise in England on demurrer. But the other statute referred to, does alter the mode of pleading, and thus allows the question to be made by demurrer. We cannot, however, on the face of the declaration, say that the promise to support the plaintiff during her life, was necessarily one which was not to be performed within a year, or that in the contemplation and by the express intention of the parties, it was not to be performed, completely, within that period. And although some of the members of the Court would be reluctant to decide fur-

*(marginal notes:)* BULL. *vs* McCREA.

Pleadings and judgment and errors assigned.

The statute of frauds does not change the mode of pleading, but the statute of Ky. raising unsealed writings to the same dignity with sealed writings, does, so far as to permit the question to be made on demurrer, whether the promise were in writing or by parol.

ther than has already been decided, that such a promise is, by its terms, absolutely and under all circumstances, exempt from the interdict of the statute, we all concur in the opinion that on the face of the declaration, it is not brought within that interdict. And the question seems to have been made in no other way.

It is urged that the declaration is defective in not averring a special demand or notice of what was requisite for the plaintiff's support, and that the bill of exceptions shows that none was proved. But we are of opinion that under the general promise to support the plaintiff, no demand or notice was necessary. And although it might have been necessary, under the special promise to pay and supply such money, &c., as would be requisite for food, raiment, &c., yet upon general demurrer it is sufficient that a breach is shown of one valid promise. The demurrers, therefore, were properly overruled.

*A general demurrer to a declaration should be overruled where a sufficient breach is shown of one valid promise.*

But we are of opinion that the defendant's motion for a non-suit, on the last trial, should have prevailed, on the ground that there was a total failure to prove the special promise laid in both counts, to pay or supply to the plaintiff such sum or sums of money as might be necessary for food, raiment, &c. &c. The promise to support the plaintiff, is in legal effect different from the special promise referred to. The defendant might support the plaintiff without paying or supplying to her any money whatever. And whether this statement be regarded as an additional promise or as a part of the same promise to support, &c., it is an essential part of the contract as alledged, and the failure to prove it is a fatal variance. We observe too, that the witness who proved the promise to support the plaintiff, proved as a part of it, the promise to take care of her, that is, the promise as proved, was to support and take care of the plaintiff as long as she lived. And we think the latter part of this promise is material as tending to show in what manner the defendant was to support the plaintiff, so far at least as to show that he was not bound absolutely to support her by the advance of money.

*A promise "to pay to plaintiff such sums of money as might be necessary for food, raiment, &c." is varient in legal effect, from "a promise to support and take care of the plaintiff."*

These discrepancies between the plaintiff's allegations and proof, not having been supplied in the progress of the trial, the error of refusing the instruction to find for the defendant, is deemed a proper ground of reversal if there were no other.

But without entering into the question as to the credibility of the witness who proved the promise to support the plaintiff; and conceding, what a part of the Court is greatly inclined to doubt, that the jury was authorized to find that a continuance or renewal of illicit intercourse between the defendant and plaintiff, formed no part of the consideration of the defendant's promise, we are of opinion that the verdict giving damages at the rate of $200 a year for the failure to support the plaintiff, was based upon an entire misconception of the legal effect of the contract as specifically proved, that is, of the promise to support the plaintiff and take care of her as long as she lived.

This contract, like every other, must be construed with a view of ascertaining the intention of the parties; and in this, as in other cases, this should be ascertained by reference to the subject matter, and the actual circumstances, as well as the words of the contract. The words "support and take care of" are not of such rigid and inflexible meaning, and have not acquired so fixed an interpretation, as not to admit of variation in their application to different persons, under different circumstances. In the case of *Keltner* vs *Keltner*, (6 B. Monroe, 40,) the engagement of two sons, (as the consideration of the conveyance of a tract of land,) "to maintain, support and take care of their parents," who were the grantors of the land, was regarded as not intended to exempt the parents from all exertion towards their own support. In this sense of the contract, the land conveyed would not have been adequate, in the circumstances of the parties, to accomplish the objects of the contract. And the parents had been accustomed to labor for their own support.

In the present case the utmost claim of the plaintiff upon the defendant, was $600 or $700, for work and labor independently of the promise to support her, &c., the

Where the proof shows a promise essentially variant from that laid in the declaration, the Court should instruct the jury to find for defendant, if required to do so.

An undertaking by one person "to support and take care of" another, is to be understood according to the varied circumstances of the parties: (*Keltner* vs *Keltner*, (6 B. Monroe, 40.) It does not imply that the person to be supported is not to use exertions to support himself.

claim is not supported by the evidence, except as a claim alledged by the plaintiff. It is proved, however, that she had been in the habit of doing various sorts of labor or service for others, and that she was a healthy woman of thirty eight or forty years of age. And upon a compromise and reconciliation of a quarrel between her and the defendant, he promised to support and take care of her during life, if she would release him from her claim, which she did. As the jury have understood this contract, the defendant, in consideration of a release from a claim, amounting at most, to six or seven hundred dollars, and which possibly was good for a much smaller sum, has undertaken and is bound to pay to the plaintiff $200 a year or to supply a support equivalent to that sum, yearly, as long as she lives, which, upon probable estimate at the time, might have been ten, twenty or thirty years. And a healthy woman of color, accustomed to contribute, by her own labor, to her own support, and capable of supplying it, is to be relieved by this contract, from all necessity of exertion. An infatuated man might make such an engagement with such a paramour, in consideration of an illicit connection, past and future; but it is difficult to conceive that a man in his senses should have made any such engagement with such a woman, on the mere ground of the release of an alledged claim for six or seven hundred dollars.

We are of opinion, therefore, that the last verdict is palpably excessive, and against the law, as applicable to the evidence in the case. And the same view of the contract as proved, and of the considerations which should determine its construction and effect, bring us to the conclusion that the Court erred in setting aside the first verdict as being for too small a sum.

Wherefore, the judgment is reversed, and the cause remanded, with directions to render a judgment on the first verdict for seventy-five dollars.

*Fry & Page* for appellant; *Harrison* for appellee.