ROWE, RESPONDENT, *v.* EGGUM ET AL., APPELLANTS.

(No. 7,840.)

(Submitted November 16, 1938. Decided December 27, 1938.)

[87 Pac. (2d) 189.]

*Messrs. George T. Baggs, John A. Matthews,* and *J. D. Taylor,* for Appellants, submitted an original and a reply brief; *Mr. Matthews* and *Mr. Taylor* argued the cause orally.

382

*Mr. Sam D. Goza, Jr., Mr. Jay M. Kurtz, Mr. E. C. Kurtz,* and *Mr. S. C. Ford,* for Respondent, submitted an original and a supplemental brief; *Mr. Ford* and *Mr. E. C. Kurtz* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This action seeks relief in the nature of specific performance of a contract between plaintiff and Mary J. Williamson, whereby the latter was alleged to have agreed not to change a will she had made and delivered to plaintiff, in which she devised and bequeathed her property to him in consideration for services to be rendered by him in caring for her during her lifetime. The case was tried to the court sitting without a jury, resulting in a judgment in favor of plaintiff. Defendants have appealed from the judgment.

The evidence in many respects was conflicting. The court in the main adopted findings in conformity with the evidence submitted by plaintiff. The findings therefore reflect the facts

of the case as revealed by the evidence, viewed in the light most favorable to plaintiff. Those findings, in substance, are as follows:

· The plaintiff was reared in the home of Mary J. Williamson from the time he was seven years of age until he arrived at maturity, and during all of this time he was treated by her as a son. During the month of November, 1923, with the consent of Mary J. Williamson, plaintiff went to California and there obtained employment, where he remained until the death of Charles Williamson, the husband of Mary J. Williamson, which occurred in February, 1933. Plaintiff, at the request of Mary J. Williamson, then returned to Montana and to her home. In the year 1917 the right leg of Mary J. Williamson was amputated slightly below the knee, and during the year 1925 her left leg was amputated at the knee, making it necessary that she remain in a wheel-chair and that she have constant nursing, care and attention. Mrs. Williamson was born August 8, 1860, making her 73 years of age at the time of her husband's death. On the death of her husband she turned to plaintiff for assistance and care and in the management of her property, consisting of of ninety-eight acres of ranch property in Ravalli county, and certain livestock and other property situated thereon.

On March 12, 1924, Mary J. Williamson executed a will wherein she bequeathed the sum of five dollars to her husband and all of her remaining property, after the payment of her debts and funeral expenses, was devised and bequeathed to plaintiff. After the death of Charles Williamson and at the request of Mary J. Williamson, plaintiff left California and went to the home of Mary J. Williamson and assisted in the management and care of her property, and assisted in nursing and caring for her. In March, 1933, Mary J. Williamson and plaintiff entered into an agreement to the effect that if the plaintiff and his wife, Rhonda, would resign their positions in California and return to Montana to care for, help and assist Mary J. Williamson during her lifetime, the will made by her in March, 1924, would not be changed or revoked, and that upon her death plaintiff would receive and have all of her property of every kind, ex-

cept that she requested that upon her death there be given out of her estate the sum of $500 to Rena Davis, which plaintiff then and there agreed would be done. In accordance with this agreement, plaintiff and his wife resigned their positions in California, returned to Montana and established their home at the home of Mary J. Williamson, and thereafter and until on or about the 4th of June, 1936, resided with her at her home, caring for, helping and assisting her, and caring for her wants and needs, and performing all the acts and things required of them under the terms of the agreement. Between the 10th day of July, 1936, to the date of her death on November 5, 1936, Mary J. Williamson did not reside with or receive help or assistance from plaintiff, but during this time plaintiff and his wife were ready, able and willing and offered to care for, nurse and assist her, but she remained away from the home of plaintiff as a matter of choice and without the consent of plaintiff.

On June 18, 1936, Mary J. Williamson, in violation of the agreement, made a later will, revoking the will made in March, 1924, and bequeathed and disposed of her property to her nieces, the defendants Catherine Eggum and Lorna Williamson. After the death of Mary J. Williamson, the plaintiff and his wife filed a claim against her estate for the reasonable value of the services rendered to her. The claim was rejected and plaintiff and his wife commenced an action based on the claim. Later this action was dismissed. The claim was filed and the action commenced upon the advice of their attorney, and the plaintiff was not advised of his right to prosecute the present action. Plaintiff and his wife did not inform their attorney that Mary J. Williamson had agreed to pay the reasonable value of their services, and the statement in the claim and in the complaint to that effect was included by the attorney upon his supposition that there was an implied contract on her part to pay the reasonable value of such services.

From these findings the court made conclusions of law and judgment, declaring that the defendants hold in trust, for the use and benefit of plaintiff, all of the property of the estate specifically described in the judgment subject to the payment

of claims against, and costs of administration of the estate, and directed that defendants Eggum and Lorna Williamson execute proper conveyances to plaintiff.

In addition to the facts disclosed by the foregoing findings, it is conceded that in the spring of 1933 plaintiff and Mary J. Williamson entered into a written agreement, whereby she leased to plaintiff for a period of one year, ending February 1, 1934, her ranch, farm machinery and livestock in Ravalli county, reserving to herself the right "to reside in the house on said premises together with" plaintiff and his family. She was to have as rental 2/5th of the entire proceeds from the ranch, he to receive the remainder. At the expiration of that lease, plaintiff procured another written lease for a term of three years, by the terms of which the same property was leased to plaintiff for an annual rental of $500. This lease was silent as to the right of Mary J. Williamson to reside in the house; it did not expire until after the death of Mary J. Williamson.

The record also shows, without conflict, that Mary J. Williamson wrote several letters to defendant Catherine Eggum, in which she complained of the treatment she was receiving by plaintiff and his wife. The first letter in point of time was dated December 31, 1933, and before the second lease was entered into, in which she stated: "I haven't been out since you left. They are on a go most of the time. I don't care I get along just as well." In one dated October 14, 1934, it was said: "St. John looked for a house for me in Stevensville could not get any I just cannot live here. If you were here I could tell you why." In a letter dated October 29, 1934, she said: "I am still here I cant get a house in Victor or Stevensville so many moves to town to send their children to school. Hoppe is looking for a house but it will be cold to move * * * Well I don't know just what I will do the next two years thare time will be up then I will be glad for that." In one dated November 25, 1934, she said: "There is a woman in Victor wants me to go and stay with her her name is Mrs. Collins. Hoppe came over and told me I dont know what she wants a month I only need someone to put me in bed and take me out. * * * I

will not rent to him any more when his time runs out it cost me over two hundred expenses so I am not making much. he müst make $300 from the cows.'' In one dated December 23, 1934, she wrote: ''Yes I will go over and live with you I am paying them 20 dollars a month for staying here They got made because I would not give them the ranch, so they are making me pay you see that will take most of the rent. * * * They did very good this year so they want it all. thay cant rent the place any more.'' In one dated December 18, 1935, she wrote: ''Kate, it seems they will never move out next year is the last for them it is just like living in Hell since they move here.''

Defendants have made several specifications of error which, in ██ in the aggregate, raise two main questions. The first question presented by the specifications is whether the court erred in admitting in evidence oral communications made by Mary J. Williamson to plaintiff, to the effect that if plaintiff would care for her during her lifetime she would not change the will already executed by her and held by plaintiff, giving all of her property to plaintiff. The second question presented is whether the quality of the proof was sufficient to establish the agreement relied upon.

The answer to the first question calls for consideration of subdivision 3 of section 10535, Revised Codes. It provides that: ''The following persons cannot be witnesses: * * * 3. Parties or assignors of parties to an action or proceeding, or persons in whose behalf an action or proceeding is prosecuted against an executor or administrator upon a claim or demand against the estate of a deceased person, as to the facts of direct transactions or oral communications between the proposed witness and the deceased, excepting when the executor or administrator first introduces evidence thereof, or when it appears to the court that, without the testimony of the witness, injustice will be done.''

Under this section it is discretionary with the court to admit such declarations, if in its opinion injustice will result if the evidence be excluded. This section has heretofore been

considered by this court in the cases of *Roy* v. *King's Estate,* 55 Mont. 567, 179 Pac. 821; *Wunderlich* v. *Holt,* 86 Mont. 260, 283 Pac. 423; *Langston* v. *Currie,* 95 Mont. 57, 26 Pac. (2d) 160; *Pincus* v. *Davis,* 95 Mont. 375, 26 Pac. (2d) 986; *Phelps* v. *Union Central Life Ins. Co.,* 105 Mont. 195, 71 Pac. (2d') 887, and other cases. No useful purpose would be subserved in reiterating the rules there announced.

The statute makes it incumbent upon the court, in the exercise of its discretion, to determine in each case whether the testimony is necessary to enable the plaintiff to make out a prima facie case and thus prevent an injustice (*Roy* v. *King's Estate,* supra). We hold that plaintiff met the requirement here. It was shown that the physical condition of Mrs. Williamson was—necessitating care, attention and nursing; that she had no children of her own; that she had already made and delivered to plaintiff a will devising and bequeathing all her property to him; that plaintiff and his wife gave up profitable positions in California in order to care for Mrs. Williamson; that he and his wife looked after Mrs. Williamson for about three years. The evidence shows in detail what those services consisted of, which we need not here recite further than to say that they were of the character usually required by a sick, invalid and aged person, and that no other compensation was paid for the services.

The court did not finally admit the declarations until all of the evidence was in. It expressly reserved the ruling on the admissibility of these declarations until final consideration of the whole case. The court did not, as we view the record, abuse its discretion in reaching the conclusion that an injustice would result if the declarations were excluded, and, hence, properly received the evidence complained of.

Was the quality of the proof sufficient to sustain the judgment? An oral contract to make a will, when acted and relied upon, may be made the foundation of an action for relief in the nature of specific performance. (*Erwin* v. *Mark,* 105 Mont. 361, 73 Pac. (2d) 537, 113 A. L. R. 1064.) The rule applies to an agreement not to disinherit or not to change an exist-

ing will. (*Dillingham* v. *Schmidt*, 85 Colo. 28, 273 Pac. 21.) Before relief will be granted in such cases the proof must be clear, convincing and satisfactory, and the terms of the agreement must be definite and certain. (*Langston* v. *Currie*, supra; *Wunderlich* v. *Holt*, supra; *Wilburn* v. *Wagner*, 59 Mont. 386, 196 Pac. 978.) Where a will is executed in conformity with the alleged oral agreement, it is regarded as strong confirmatory proof that such an agreement was entered into, and the same degree of convincing evidence is not required as where no such will was made. (*Worden* v. *Worden*, 96 Wash. 592, 165 Pac. 501.) Here, however, it cannot be said that the will of 1924 was executed in conformity with the oral agreement, because the will was executed long before the alleged oral agreement was made, and before Mrs. Williamson became the owner of the property here involved, which came to her upon the death of her husband. Plaintiff did, however, introduce proof that Mrs. Williamson, after the death of her husband, made statements to others than plaintiff that what she had was going to plaintiff.

Defendants contend that the existence of such an agreement ▮ was negatived by the fact that plaintiff had a lease on the ranch of Mrs. Williamson for the year 1933, which lease contained a clause making it incumbent upon the lessee to permit the lessor, Mary J. Williamson, to reside on the property, the plaintiff to obtain 3/5ths of all that was produced, and Mrs. Williamson to have the other 2/5ths. They contend further that the existence of the oral agreement was negatived by the fact that the second lease was executed for a term of three years for a cash rental. They contend that these leases show that plaintiff was to be paid for carrying on the ranching operations independently of the alleged oral agreement, and that all of the work done by plaintiff, after the alleged oral agreement was entered into, was done by virtue of these leases. This contention cannot be upheld.

The first lease simply reserved the right to reside in the house, without making any provisions as to who was to care for Mrs. Williamson. The second lease made no mention of the right

of Mrs. Williamson to reside in the house. At most, the leases fixed the rights of the parties with relation to the use of the property and did not purport to deal with the question of looking after the personal wants of this aged and crippled woman, which involved services not expressly stipulated for in the leases. It is suggested by defendants that if there had been an agreement such as is here relied upon, it would have been incorporated in the leases. Its absence from the written leases at most might raise an inference that no such oral agreement existed; but this inference—if it may be said that such an inference arises—in the face of the positive testimony that there was such an oral agreement, simply made the question one of fact for the court to decide.

The evidence shows that Mary J. Williamson was afflicted with ulcers of the stomach and other ailments, and at the time of the agreement was 73 years of age and was in need of personal care and attention by reason of the fact that both her legs had been amputated. A person in that situation was certainly in need of some personal care, attention and nursing, and an agreement to care for and look after a person in that condition need not specify in detail just what the care and attention must consist of in order to meet the requirement that it be definite and certain.

Defendants contend that the statements made by Mrs. Williamson in the letters referred to above disclose that she never intended to give her property to plaintiff, and hence, never agreed not to change the will. The statements tending to indicate that she was not properly treated by plaintiff and his wife simply raised a conflict in the evidence on that point. Numerous witnesses testified for plaintiff that plaintiff and his wife treated Mrs. Williamson with kindness, courtesy and consideration. It was shown, too, that because of her sickness she was placed on a diet and plaintiff's wife, being a nurse, kept her strictly on the diet in accordance with directions from the doctor. It was also shown that plaintiff's wife insisted upon Mrs. Williamson using a separate drinking cup and towel from those used by the others in the household. It is reasonable to suppose

that Mrs. Williamson resented this course of procedure, but it would be no ground for her to repudiate her contract, if in fact one was made. Other statements in the letters indicating that she would give nothing to plaintiff, together with the will subsequently made, were just as convincing in establishing the breach of her contract as in proving that no contract as claimed by plaintiff was made.

Defendants count also upon the fact that Mrs. Williamson paid $240, or at the rate of $20 per month, for her board during one of the years when plaintiff was supposed to care for her under the alleged contract, and upon the fact that Mrs. Williamson paid for her own hospitalization during her last illness, and also for a hired girl to look after her for a brief period when plaintiff's wife was absent from the ranch home. These facts would not disprove the existence of an agreement to care for Mrs. Williamson. In other words, an agreement to care for a person in the condition in which she was would include something more than the furnishing of board and hospitalization. (*Bless* v. *Blizzard*, 86 Kan. 230, 120 Pac. 351; *Bull* v. *McCrea*, 47 Ky. 422; and compare *White* v. *Massee*, 202 Iowa, 1304, 211 N. W. 839, 66 A. L. R. 1434.)

Defendants also contend that the existence of an agreement as ██ claimed by plaintiff is refuted by the fact that a claim was first presented to the executor and rejected, and an action filed for the purpose of establishing the claim which was later dismissed. The circumstances under which this procedure was followed was explained, as found by the trial judge, and that explanation the court properly found was satisfactory and did not bar plaintiff from maintaining this action. Similar facts were involved in the case of *Popejoy* v. *Boynton*, 112 Or. 646, 229 Pac. 370, where the court, in holding that the presentation of a claim which was rejected did not bar action on the agreement, said: "The only serious attack made upon this suit of plaintiff's is the fact that she presented a large bill to the probate court for all of these services, which appears to have been rejected, but she explains this by saying that her then attorney advised her that this was the only way in which she

could get what she was entitled to, and we are disposed to accept that as the true explanation.'' The course pursued by plaintiff under the circumstances did not constitute an election of remedies. It was an apparent election made under mistake as to his rights, which the courts hold is not binding upon him. (20 C. J. 37; *Kaufman* v. *Cooper,* 39 Mont. 146, 101 Pac. 969.)

The circumstances relied upon by defendants, taken either singly or collectively, do not as a matter of law preclude a finding that the agreement was made as alleged.

The only other point raised by the specifications of error, but which was not argued by defendants, is whether the court was warranted in holding, as it did, that the costs, fees, expenses and attorneys' fees incurred in this action are not a proper charge against the estate of Mary J. Williamson. The court's conclusion in this respect was correct. (*In re Davis' Estate,* 31 Mont. 421, 78 Pac. 704; *In re Springer's Estate,* 79 Mont. 256, 255 Pac. 1058; *In re Baxter's Estate,* 94 Mont. 257, 22 Pac. (2d) 182; *In re Hamilton's Estate,* 96 Mont. 551, 33 Pac. (2d) 258; and compare *In re Ross' Estate,* 179 Cal. 358, 182 Pac. 303; *In re Faling's Estate,* 113 Or. 6, 228 Pac. 821, 231 Pac. 148; *In re Mundt's Estate,* 169 Wash. 593, 14 Pac. (2d) 59; *Nichols* v. *Wallace,* 155 Okl. 231, 9 Pac. (2d) 430.)

The judgment is affirmed.

Associate Justices Stewart, Anderson and Morris concur.