No. 12891

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

LEONA M. CONITZ, by her Brother and
Next Friend, William F. Hafferman,

                Plaintiff and Appellant,

    -vs-

JOANE M. WALKER,

              Defendant and Respondent.

---

Appeal from: District Court of the Thirteenth Judicial District,
           Honorable Robert H. Wilson, Judge presiding.

Counsel of Record:

    For Appellant:

        Hutton, Sheehy and Cromley, Billings, Montana
        John C. Sheehy argued, Billings, Montana

    For Respondent:

        Moses, Kampfe, Tolliver and Wright, Billings,
        Montana
        D. Frank Kampfe argued, Billings, Montana

---

                Submitted: June 16, 1975

                Decided: OCT 31 1975

Filed: OCT 31 1975

_Thomas J. Kearney_
                          Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

This is an appeal from a judgment determining the distribution of the estate of Edward H. Conitz. This appeal was brought by plaintiff's brother and next friend, William F. Hafferman. Plaintiff, Leona M. Conitz, wife of the deceased is presently a patient at the Warm Springs State Hospital. Leona is specifically appealing from that portion of the judgment which finds valid inter vivos gifts between Edward H. Conitz, deceased, and defendant, Joane M. Walker, in the following personal property: the checking account in Security Trust and Savings Bank, the savings account in the Eureka Savings & Loan Association of Eureka, California, and the 1966 Thunderbird automobile owned by Edward. Leona also appeals from that portion of the judgment which holds that the remaining gifts made by Edward to defendant were gifts causa mortis, and in effect holding defendant is entitled to one-third of such causa mortis gifts. Finally, Leona appeals from that portion of the judgment requiring her to bear the costs of her own hospitalization, care and maintenance from the moneys which have been received by defendant.

The district court's findings of fact, which are not in dispute, show that Leona M. and Edward H. Conitz were married at Whitefish, Montana, on January 7, 1939, and remained married until the date of his death, November 23, 1972. There were no children born to this marriage. After their marriage, Leona and Edward lived in Kalispell, Portland, Oregon, and Billings. They were both always employed or engaged together in the grocery business and during the course of the marriage Leona contributed continually to the building of the finances of the couple.

Over a period of years, Leona contracted and suffered from Parkinson's Disease, so that as the disease progressed it became difficult for her to walk; then the disease affected her

arms, causing them to shake constantly. Her condition progressed
to the point that she became nearly bedridden the latter part
of 1971. Until then, however, she participated in the family
business actively, in spite of her condition, working in the
store until she could no longer do so, and later planning ad-
vertisements and sales for the grocery business conducted by
the couple.

Leona and Edward had engaged in the grocery business
in Portland, Oregon, shortly after their marriage. They jointly
owned a house in Portland. Eventually they sold their Portland
grocery business, and in 1957 or 1958, moved to Billings where,
after a period of private employment, they started another groc-
ery business in Billings, known as "Gorham Park IGA"; this bus-
iness in turn they sold and a year later in 1967, began a grocery
business in Billings known as "State Street IGA".

In addition to the grocery business, Edward and Leona
accumulated property over the years. They jointly owned a house
on Rimrock Road in Billings; they jointly owned stocks, but some
stocks were kept in the name of Edward only; their checking account
was a joint account in the Security Trust & Savings Bank of Billings,
Montana; they maintained a joint safety deposit box where they
kept valuable documents.

In the year 1967, Edward and Leona began the State Street
IGA business. They purchased the land for the site, and contracted
to build a building upon it. The land and the building were cap-
italized at approximately $120,900. To provide funds for such
capitalization for land and buildings, the joint assets of the
parties were transferred from their joint ownership to a corpor-
ation they set up for the new business known as "Ed Conitz Shopping
Center, Inc.". In 1967, Leona transferred the following joint
assets to the shopping center corporation: her joint interest

- 3 -

in their home on Rimrock Road, which later became subject to a contract for sale, which contract for sale is also owned by the corporation; her joint interest in stocks of corporations jointly held with her husband; her joint interest in the land on which the State Street IGA was built; her interest as a joint seller in the contract for sale of the Gorham Park IGA Store, which the couple had formerly operated; and her interest in a contract for sale in the house which they jointly owned in Portland, Oregon. In addition, the couple encumbered the property for $50,000 by mortgage to the Security Trust & Savings Bank of Billings, under which mortgage indebtedness monthly payments must be made and under which mortgage Leona is co-obligor.

After transfer of the properties to the corporation, the corporation stock was issued in such manner that one share of stock was issued to Leona, one share to the attorney who handled the formation of the corporation, and 120,901 shares in two certificates, to Edward.

That same year, Leona and Edward executed mutual wills leaving their property to each other upon their death.

In October, 1971, Leona's condition became worse and she voluntarily committed herself to the Warm Springs State Hospital.

In December, 1970, Edward had contracted cancer of the intestine and underwent an operation. He seemed to recover from this, but in 1971, he sold the inventory and equipment of the State Street IGA Store under a contract, which contract for sale of inventory and equipment remained as an asset of the shopping center corporation. The ownership of the land and building on which the store is situated remained also in the corporation. Edward attended Eastern Montana College where he majored in languages and achieved honors. He had a recurrence of his cancer in

late July, 1972. He was hospitalized for this condition in Billings Deaconess Hospital in Billings on August 1, 1972, where it was found that his condition was considered terminal.

In October, 1971, and subsequent to the time that Leona voluntarily committed herself to the State Hospital at Warm Springs, Edward and defendant, Joane M. Walker, met by chance during their lunch hour at Eastern Montana College. They had been acquainted with each other previously by reason of defendant having been a customer of Edward and Leona while they were in the grocery business. Edward and defendant thereafter dated.

On or about August 2, 1972, while in the hospital, Edward wrote out a direction to the Security Trust & Savings Bank that would allow defendant access to his and Leona's joint safety deposit box; Leona's consent was not obtained. On August 2, 1972, defendant went to the bank, obtained entrance to the joint safety deposit box, and removed several stock certificates and the will of Edward. These documents she delivered to an attorney in Billings. The attorney eventually obtained a bank certification of Edward's signatures on the stock certificates and then caused the certificates to be transferred and delivered to Edward's father.

On August 6, 1972, Edward, while in the hospital, made and executed a will in which he left all of his property to defendant "subject to my wife's dower interest."

On August 7, 1972, Edward signed and delivered to defendant and the same attorney, a check upon the joint checking account of Edward and Leona in Security Trust & Savings Bank. The check was made out to defendant and was signed by Edward; the remainder of the check was in blank at delivery. Defendant and the attorney went to the bank and through an officer, ascertained the balance in the account, which the bank officer entered upon the check, and dated it. The check was then used to withdraw all of the

funds in the joint checking account and the whole balance, amounting to $8,381.09, was transferred to an account started that day in the same bank in the sole name of defendant.

Edward also had a savings account in the Eureka Savings & Loan Association of Eureka, California in his name. On August 7, 1972, the account was closed and the balance, $1,531.06, was sent to Edward while he was in the hospital by means of a draft payable to him. He endorsed the draft and gave it to defendant who also endorsed her name on the draft and deposited it in her personal savings account at Valley State Bank in Billings.

On August 14, 1972, Edward endorsed the assignment forms on the two stock certificates which he held in Ed Conitz Shopping Center, Inc., one certificate for one share and the other for 120,900 shares, and delivered and assigned them to defendant.

While Edward was in the hospital he endorsed and delivered to defendant the title to his 1966 Thunderbird. He also signed the title to a trailer home owned by himself over to defendant who in turn sold the trailer to a third party and transferred title.

As a result of all these transfers, Edward transferred all the property which he owned which was of any consequence.

Edward was discharged from the hospital on August 30, 1972, and thereafter moved to the home of defendant where he remained until his death November 23, 1972. On November 6, 1972, he executed a codicil to his will. However, by virtue of the transfers and assignment made while in the hospital he had at the time of making the codicil to his will no estate of any kind which could be subject to probate.

The district court found valid inter vivos gifts of the checking account, the savings account and the 1966 Thunderbird. The district court found that all other gifts made by Edward to defendant were gifts causa mortis and held that since a person

- 6 -

cannot do by gifts causa mortis that which could not be accomplished by will, that Leona could renounce the will and take her dower share of the estate. Therefore, the court awarded Leona two-third interest in the estate aside from the checking account, savings account and Thunderbird automobile. From that judgment Leona M. Conitz brings this appeal. There was no cross-appeal by defendant.

There are many issues and arguments presented by both sides of this dispute. The arguments themselves are no less complicated than the fact situation we set out above. Therefore, in the interest of brevity, this Court will discuss only that issue which we find dispositive of the case: Whether a contract existed between Leona and Edward to leave in their wills, their property to each other upon their deaths?

Leona argues that there was sufficient evidence presented for this Court to find that a contract to execute mutual wills existed between Leona and Edward. Respondent, however, argues that there is no such evidence and that Leona's contract theory was pulled by Leona out of the air.

It is clear that in Montana a person may make a valid contract to dispose of his property by will. Erwin v. Mark, 105 Mont. 361, 73 P.2d 537.

This Court in Rowe v. Eggum, 107 Mont. 378, 87 P.2d 189, enforced an oral agreement of a decedent not to change a will made in favor of the plaintiff.

The rule of law in Montana is that proof of an oral contract by a deceased to leave property by will:

> " * * * must be clear, cogent, and convincing, and that the making of such an oral contract or agreement must be established by disinterested witnesses." Cox v. Williamson, 124 Mont. 512, 227 P.2d 614.

Reviewing the evidence before us, we see that in 1967

Leona transferred considerable property to the "Ed Conitz Shopping Center, Inc."  She also assumed considerable obligation in the financing of that corporation as a co-obligor of the note involved.  In return she received only one share of stock in that corporation.  At that same time Leona and Edward executed wills leaving their property to the other upon their death.

Leona testified that the agreement between herself and Edward was that " * * * when one of us goes first then everything that is left belongs to the remaining one."

The attorney who drafted the wills testified:

" * * * Ed's old Will gave everything to Leona and Leona's old Will gave everything to Ed."

Mrs. Eldon Shirley, Edward's aunt, testified that Edward told her:

" * * * if Leona goes first I get it all, if I go first Leona gets it all."

Perhaps each item of evidence above standing by itself does not establish a contract between Edward and Leona to make mutual wills leaving their property to the other.  However, viewed as a whole this Court finds that the oral contract between Leona and Edward has been established in this case by clear, cogent and convincing evidence and by the testimony of disinterested witnesses, Edward's attorney and his aunt.

To hold otherwise would be to ignore the obvious:  A woman does not work all her life next to her husband, help build a large estate, transfer her share of that estate to a corporation and assume a long-term obligation on an outstanding note, all for one share of stock in that corporation with no guarantee of any future financial security.  This is especially true when she is sick from a crippling disorder and unable to ever support herself in the future.

The judgment of the district court is reversed.

_____
Chief Justice

- 8 -

We concur:

_____
John Conway Harrison

_____
Gene B. Daly

_____
Frank I. Haswell
Justices