No. 82-295

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

MILANA LAZETICH, PETER LAZETICH
and WILLIAM LAZETICH,

Plaintiffs and Respondents,

-vs-

LUCILLE MILLER and LORRAINE DALTON,
et al.,

Defendants and Appellants.

---

APPEAL FROM: District Court of the Third Judicial District,
In and for the County of Deer Lodge,
The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Donald Garrity; Garrity, Keegan & Brown, Helena,
Montana

For Respondents:

Moses Law Firm; Michael Moses, Billings, Montana

---

Submitted on Briefs: March 4, 1983

Decided: October 12, 1983

Filed: OCT 12 1983

*Ethel M. Harrison*
_____
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Plaintiffs brought this action against the personal representatives of the estate of Mary Lazetich to enforce an oral agreement not to revoke the provisions of a will disposing of family corporation stock. The Third Judicial District Court, Deer Lodge County, ordered enforcement of the agreement, and defendants appeal. We affirm.

The issue on appeal is whether there is sufficient evidence to establish that Mary Lazetich orally contracted not to revoke the provision of her May 2, 1966 will directing the disposition of family corporation stock.

The dispute involves shares of stock in Lazetich & Sons, a closely-held family corporation. Peter and Mary Lazetich, husband and wife, each owned a one-sixth interest in the stock of the corporation in early 1966. On May 2, 1966, they executed mutual wills with clauses providing that the stock would pass to the surviving spouse. Upon the death of the surviving spouse, it would pass to three sons and one grandson, share and share alike. The provision from the will of Mary Lazetich was as follows:

> "My husband, PETER LAZETICH, has made and executed a Last Will and Testament, the same date as my Will, and in this Will he has provided that his undivided one-sixth of said stock in said corporation [Lazetich & Sons] will go to me in the event he dies before I do. Upon the death of the survivor of myself or husband, the one-third interest that we own in said stock is given and bequeathed to my son, MILAN LAZETICH, to my son, ELI LAZETICH, to my son WILLIAM LAZETICH, and to my grandson PETER LAZETICH, son of WILLIAM LAZETICH, share and share alike."

Peter Lazetich predeceased his wife and his May 2, 1966 will was admitted to probate. His undivided one-sixth interest in the Lazetich & Sons corporate stock was distributed to his wife, Mary Lazetich.

2

In the 1970s Mary Lazetich executed two more wills, the last on November 28, 1978. Upon Mary's death, the November 28, 1978 will was admitted to probate. It did not bequeath the Lazetich & Sons corporate stock in the manner provided in the May 2, 1966 will. The plaintiffs filed claims against the Mary Lazetich estate alleging they were entitled to the one-third stock interest in Lazetich & Sons. Plaintiffs claimed that Peter and Mary Lazetich had entered into an oral contract not to revoke that portion of their mutual 1966 wills relating to the distribution of Lazetich & Sons stock. The defendant personal representatives disallowed the claims of the plaintiffs and this lawsuit followed.

The case was heard by the District Court without a jury. Extensive findings of fact and conclusions of law were prepared by the District Court.

The attorney who prepared the May 2, 1966 will also prepared the November 28, 1978 will of Mary Lazetich. He was the primary witness at the trial. The findings of the District Court in regard to his testimony are substantially as follows. Previous to execution of the mutual wills and in the presence of their attorney, Mary and Peter Lazetich agreed that upon the death of both parties, their one-third interest in Lazetich & Sons corporate stock would be distributed between their sons and one grandson, share and share alike. Pursuant to that agreement, mutual wills were drawn for Peter and Mary Lazetich and executed on May 2, 1966. When the attorney prepared the November 28, 1978 will for Mary Lazetich, he had forgotten about the May 2, 1966 will. The District Court also found as follows:

> "Peter and Mary Lazetich were very fond of each other before, on and after May 2, 1966, and they pledged that they would not change their Wills.

"There is no evidence that the agreement between Mary and Peter Lazetich was induced by duress, menace, fraud, undue influence or mistake."

The District Court's conclusions of law stated that Peter and Mary Lazetich had agreed that upon the death of the first of them the one-sixth stock ownership would pass to the survivor. Upon the death of the survivor, the total one-third stock interest would pass to the designated sons and grandson, share and share alike. In consideration of that agreement, the mutual wills were executed. Based upon these findings and conclusions, the District Court ordered the personal representatives to distribute the stock of Lazetich & Sons in accordance with the May 2, 1966 will.

Agreements not to revoke wills are specifically addressed by the Montana Uniform Probate Code (UPC). Section 72-2-105, MCA provides:

"(1) A contract . . . not to revoke a will or devise . . . if executed after July 1, 1975, can be established only by:
        (a) Provisions of a will stating material provisions of the contract;
        (b) An express reference in a will to a contract and extrinsic evidence proving the terms of the contract; or
        (c) A writing signed by the decedent evidencing the contract.
(2) The execution of . . . mutual wills does not create a presumption of a contract not to revoke the . . . wills."

Because the alleged contract was entered into in 1966, the provisions of the UPC do not apply.

It is clear that prior to the adoption of the Montana UPC a person could make a valid oral contract to dispose of her property by will. In Conitz v. Walker (1975), 168 Mont. 238, 244, 541 P.2d 1028, 1031, this Court stated:

"It is clear that in Montana a person may make a valid contract to dispose of his property by will. Erwin v. Mark, 105 Mont. 361, 73 P.2d 537.

"This Court in Rowe v. Eggum, 107 Mont. 378, 87 P.2d 189, enforced an oral agreement of a decedent

not to change a will made in favor of the plaintiff.

"The rule of law in Montana is that proof of an oral contract by a deceased to leave property by will:

"'* * * must be clear, cogent, and convincing, and that the making of such an oral contract or agreement must be established by disinterested witnesses.' Cox v. Williamson, 124 Mont. 512, 227 P.2d 614."

In Conitz, as here, one party argued there was sufficient evidence to find a contract while the other party argued there was no such evidence and that the contract was "pulled out of the air." In holding that there was such a contract, the Court stated:

"Perhaps each item of evidence above standing by itself does not establish a contract between Edward and Leona to make mutual will[s] leaving their property to the other. However, viewed as a whole this Court finds that the oral contract between Leona and Edward has been established in this case by clear, cogent and convincing evidence and by the testimony of disinterested witnesses . . .." Conitz, 168 Mont. at 245, 541 P.2d at 1031.

The basic rule was restated more strongly in Craddock v. Berryman (1982), _____ Mont. _____, 645 P.2d 399, 402, 39 St.Rep. 835, 837. There we stated that "contracts to make wills are looked upon with disfavor because the other contracting party is dead and cannot affirm or deny the making of the contract. The law, therefore, requires clear and convincing evidence." Further, this Court emphasized that it would not "substitute its judgment for that of the lower court on factual issues if there is credible evidence to support the court's findings." Craddock, 645 P.2d at 402, 39 St.Rep. at 838, citing Kearns v. McIntyre Construction Co. (1977), 173 Mont. 239, 567 P.2d 433.

There is no significant disagreement between the parties as to the law. However, the defendants contend there is not sufficient evidence to establish that Mary Lazetich

5

orally contracted not to revoke the provisions of her May 2, 1966 will directing the disposition of family corporation stock. In essence, the defendants attack the sufficiency of the testimony of the attorney who prepared the wills in question. The defendants contend that the testimony sets forth only the attorney's conclusion that there was in law an agreement between Peter Lazetich and Mary Lazetich, rather than establishing that there was in fact such an agreement.

On redirect examination, the attorney-witness testified as follows:

"Q. . . .[I]n your discussions with Mary and Peter Lazetich prior to the mutual wills, did they freely and mutually between themselves consent and enter into an agreement as to how the shares of stock of Lazetich and Sons, which they held, would be distributed at not only the first one to die but the second one to die?

"A. Yes, they had a very specific agreement and they were totally in accord with one another.

"Q. Is that agreement as evidenced by their wills of May 2, 1966?

"A. Without any question in my mind."

On cross examination the attorney-witness testified regarding the question of revocation:

"Q. Did you advise them that upon the death of either of them that these wills could not be changed?

"A. They understood that. They said that's the way they wanted it to be and pledged that to each other in my presence.

"Q. Could you tell us exactly what was said?

"A. Did I tell them what?

"Q. Could you tell me exactly what was said at that time?

"A. There was no question about the fact that they knew this was binding upon each one. They each wanted what the other wanted and as to those two individuals, there was no question as to the fact they would live up to their promises to one another.

"Q. You have the well deserved reputation of being a careful lawyer.

"A. I like to think I'm a careful lawyer, yes, sir.

"Q. You did not specifically point out that upon the death of one, these wills could not be revoked?

"A. That was discussed, Mr. Garrity, with both of them and this is what they wanted.

"Q. Why didn't you put it in the will?

"A. Why not? It wasn't necessary. I made mutual wills and I don't think that is necessary if the people understand them."

The defendants also question the foregoing testimony as being inconsistent with the subsequent drafting of wills for Mary Lazetich which changed the dispositive scheme for the stock. The attorney explained as follows on cross-examination:

"Q. And at the time you prepared those wills, were you under the impression that the May 2nd, 1966 will of Mary Lazetich was irrevocable?

"A. At the time I prepared those wills, I did not have those wills in mind. I was busy in trial practice. I never considered it. I never keep copies of wills in my office. Mary Lazetich was a personal friend of mine. I knew she was having trouble with Eli Lazetich, her son, and I just did it without any special type of consultation with her whatsoever. I may have talked with her for five or ten minutes at the most.

"Q. You didn't inquire as to whether she had a will in existence at that time?

"A. No, I did not inquire, sir.

"Q. You didn't review any previous wills?

"A. No, I did not review any previous will. Had I reviewed the previous will, I would have advised her not to make any type of change and under those circumstances I would not have prepared another will for her."

Following direct and cross-examination of the attorney, the court inquired as follows:

"Q. . . . [D]o you have a fairly good independent recall of the circumstances existing at the time the 1966 will was prepared?

"A. Yes, I do. I might say, Your Honor, I've never made up many mutual wills and for that reason I do have an independent recollection of that transaction.

"Q. Would you tell me what you can recall concerning the conversations that occurred, I assume in your office, regarding their expectations as far as what would happen with their estate when one would die and what would happen to that estate, what would happen upon the death of the other?

"A. Your Honor, I looked at the copies of the two wills. I think their expectations were certainly in conformity with the language of the two documents. They were very close to one another. When they would visit with me, it was more on a -- I suppose a friendship basis than a technical professional basis. And we would sit and visit and enjoy each other's company. They would talk about things. They were proud of what they had accumulated and proud of their family and I was proud of their friendship. I would say there was no formal technical discussion that you might have under certain situations.

"Q. You have no notes of the conversations you may have had with them at the time the wills were originally discussed or prepared in 1966?

"A. I do not. My method of operation in my practice has been to make notes and I then dictate the will. The will is returned to me, the clients brought in and they look everything over. If they agree, then the notes are discarded or destroyed. As a matter of fact, I still practice that way."

This was the essential testimony concerning the existence of the contract between Mary and Peter Lazetich.

It is also important to consider the wording of the will of Mary Lazetich, which stated that her husband had executed his will on the same date and which contained the same provision regarding disposition of the stock. While not sufficient in itself to show an agreement not to revoke, this is strong confirmatory proof that such an agreement was made. In Rowe v. Eggum (1938), 107 Mont. 378, 390, 87 P.2d 189, 193, this Court stated:

"Where a will is executed in conformity with the alleged oral agreement, it is regarded as strong confirmatory proof that such an agreement was entered into, and the same degree of convincing evidence is not required as where no such will was

8

made. (Worden v. Worden, 96 Wash. 592, 165 Pac. 501.)"

It is true that the testimony by the attorney-witness does not set forth exactly what was said by Mary and Peter Lazetich. But it is reasonable that without notes the attorney could not recall the specific statements or conversations after a lapse of more than fifteen years. Considering the testimony and the wording of the will itself, we hold that there is sufficient credible evidence to support the District Court's findings and conclusion. We therefore affirm the judgment of the District Court.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices


Justice Morrison deems himself disqualified and did
not participate in this decision.

Mr. Justice Daniel J. Shea, dissenting:

I dissent. I do not believe the testimony of the attorney established the existence of an oral contract not to revoke dispositive provisions of mutual wills by clear, cogent and convincing evidence.

We recognized oral contracts not to revoke a will before adopting the Montana Uniform Probate Code. Sanger v. Huguenel (1922), 65 Mont. 236, 211 P. 349. However, we have consistently regarded them with disfavor and require proof by clear, cogent and convincing evidence established by the testimony of disinterested witnesses.

Other jurisdictions have defined clear and convincing:

"Clear and convincing means simply that witnesses to a fact must be found credible; facts to which witnesses testify must be distinctly remembered, details must be narrated exactly and in order, testimony must be clear and direct and weighty and witnesses must be lacking in confusion as to facts at issue." Schulte v. Franklin (1981), 6 Kan.App.2d 651, 633 P.2d 1151.

"The phrase 'clear and convincing' characterizing evidence required to support an oral contract for a devise or legacy serves as a strong admonition to the trier of fact to bear in mind that the deceased is not available and that those supporting the claim are limited only by their own conscience and practiced eye and ear of the trial judge." Edwards v. Sentell (Ala. 1968), 208 So.2d 914.

By either of these definitions, the evidence fails to meet the standard.

The trial court refused to grant summary judgment for either party because of concern for the conclusory statements in the drafting attorney's affidavit. The affidavit provides no _factual_ basis to support the assertion of an agreement between Mary and Peter Lazetich not to revoke dispositive provisions of their mutual wills.

- 10 -

The hearing failed to resolve the question of exactly what was said nor did it resolve the question of why the attorney prepared and witnessed the later will knowing it was contrary to alleged oral contract. The attorney's testimony at the hearing did not provide clear and convincing answers to these questions. His best answer to the question of exactly what was said was to reply, "[t]hey understood that (the wills could not be changed). They said that's the way they wanted it to be and pledged that to each other in my presence." The attorney was asked about the agreement several times, and his replies varied in degree of uncertainty. He never made a clear and convincing response to the questions of exactly what was said. Although the attorney's testimony may show some kind of past intention of the parties, it still falls short of clear and convincing evidence of the mutual assumption of a contract obligation.

The trial judge's finding that an oral agreement was made leaves open the question of the exact terms of the agreement. Although the trial judge enforced only a single clause of Mary Lazetich's 1966 will, we do not know whether the agreement not to revoke was exclusive to justify that provision of the will, or whether she had contracted not to revoke the entire will. An agreement not to revoke the entire will would be unenforceable because no copy of the 1966 will has produced at trial. We have only a single clause of that will as part of the trial and appellate record. In fact, a fair inference from the attorney's testimony (quoted in the majority opinion) is that the entire will was considered irrevocable rather than the one clause at issue here. If this is so, failure to produce full copies of the 1966 will would be fatal to the plaintiffs' case.

The attorney testified that he had no notes of his conversations with Peter and Mary Lazetich at the time the wills were discussed and prepared in 1966. He testified from memory that Lazetichs had a specific agreement and were totally in accord with one another. But that testimony is inconsistent with the fact that he personally drafted and witnessed one of Mary Lazetich's later wills. This will changed the dispositive scheme and revoked her 1966 will. A valid oral contract not to revoke the 1966 will would invalidate the later will, yet the attorney prepared and witnessed the will. The attorney did not distinctly remember facts, the details were not exact and in order, and the testimony was not clear and direct. I remain unconvinced that the evidence meets the standard of clear, cogent and convincing.

I would rule as a matter of law the evidence is insufficient to establish an oral contract between Mary and Peter Lazetich not to revoke the provision of their 1966 mutual will distributing their stock in the family corporation. I would reverse the trial court.

_Daniel J. Shea_
Justice